STATE of Missouri, Respondent,

v.

Ernestine WEBB, Appellant.

No. 37902.

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 13, 1977.

game statute, RSMo. § 561.450. After a guilty verdict the trial court imposed a one-year jail sentence and defendant has appealed.

Two issues are raised. Defendant challenges the state's information, contending it is fatally vague, and contends the trial court erred in admitting demonstrative evidence seized from her motel room. We look first to the information, with our emphasis on the challenged portion:

"THAT ERNISTINE TODD WEBB also known as 'MILDRED' ACTING WITH ANOTHER in the City of St. Louis/State of Missouri, on the 22 day of July 1974 did unlawfully and feloniously steal by means of certain false pretenses and deceit, to-wit: by pretending to have found ten thousand dollars lawful money of the United States in an envelope, which pretenses were made to CORENE CRESEWELL (sic) and *were known to be false and untrue by the said ERNISTINE TODD WEBB also known as 'MILDRED' and CORENE CRESEWELL (sic) relying on said false statements*, pretenses and deceit thereby *was induced to part* with approximately one thousand three hundred and ten dollars lawful money of the United States, with the felonious intent then and there to steal and permanently deprive the owner of the use thereof and convert the same to her own use and use of another by means of deceit; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

Defendant argues the information is unclear as to who stole the money and from whom it was stolen. We are urged to read the information as if it stopped with the name "CRESEWELL." So read, and without a comma after the name "MILDRED," defendant's argument might stand. But reading on, the words "relying on said statements" make it clear Corene Creswell is the victim, not another accused. The trial court commented that the information

Harris, Kirksey & Thomas, Allen I. Harris, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Robert Paul Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for respondent.

CLEMENS, Presiding Judge.

This is a "pigeon drop"[1] case. The state charged defendant Ernestine Webb, alias "Mildred," with violating the confidence

---

1. It appears that in the jargon of confidence men "pigeon" refers to a gullible victim; "drop" refers to the "pigeon" parting with money.

was "not artfully drawn" but denied defendant's motion to dismiss.

*Hodges v. State*, 462 S.W.2d 786[1] (Mo. 1971), holds an information must state essential facts constituting the offense charged, must adequately notify defendant of the charge and must constitute a bar to further prosecution. The information here meets that test. We so decide in the light of *State v. Fields*, 366 S.W.2d 462[3] (Mo. 1963) holding: "The term 'confidence game' cannot easily be defined so as to cover all the cases falling within it, since schemes devised for the swindling of others 'are as various as the mind of man is suggestive'; the term has a relative and variable meaning, each case depending on its peculiar circumstances." We deny defendant's first point which we conclude is specious. As said, defendant also claims the court erred in admitting items seized in her motel room. Since this raises an issue of probable cause, we state facts concerning the confidence game.

Victim Corene Creswell was on a grocery-store parking lot when defendant introduced herself as Mildred, showed identification, and said she was making a survey. As they were talking, Ida Wilson, defendant's confederate purporting to be a stranger, interrupted to ask if they had seen a man drop "this packet I picked up." Defendant said she had seen it and Ida told her the envelope contained money; defendant counted it and said it contained $10,000. Ida said she worked at a bank and knew lost money could be traced by serial numbers. To avoid this, Ida suggested that if the three of them could raise $10,000 in other money of their own they could take their "clean money" to the bank for inspection and divide the found money equally.

Ida gave defendant an envelope which she said contained $5,000 she had been saving to buy a house. The three women then drove to Mrs. Creswell's house and she gave defendant $1,310 in money. Defendant then left Mrs. Creswell with Ida, saying she was going to the bank to have the new money inspected. When defendant did not return, Ida became restive and Mrs. Cres-

well suspicious. Ida tried to run away but Mrs. Creswell grappled with her roughly and partly disrobed her. Police arrived and arrested Ida. At jail, Ida had only her undergarments and asked to make a phone call to Room No. 6 at the Rainbow Motel in East St. Louis to have some clothes brought to her. By then Mrs. Creswell had given police a description of defendant—by age, complexion, attire and her light-colored car with a Texas license. Instead of making the telephone call police went to East St. Louis and contacted local police.

At the motel the police found defendant's car, as described by Mrs. Creswell, and at the door of Room No. 6 overheard conversations about not worrying because bondsmen were on the way. As the police entered they saw a purse on a chair by the door. They found defendant, dressed as described by Mrs. Creswell, and a man who threw a tablet into a closet; police arrested both. On the tablet was written a "pigeon drop" plan and with it were some packets of play money. Inside the purse police found the driver's license defendant had shown Mrs. Creswell and also $620 in money. All of these items were received in evidence.

At trial defendant first objected to the written "pigeon drop" plan and the play money. The objection was overruled on the ground the items were found in plain view. Defendant also objected to introducing the contents of her purse and this was also overruled on the ground the seizure was incident to a lawful arrest based on probable cause. These two points in turn.

We make a threshold determination that there was probable cause for the arrest. *State v. Maxwell*, 502 S.W.2d 382[1] (Mo.App.1973), holds "Probable cause consists of the facts available to officers at the moment of the arrest, and whether at that time such facts would warrant a man of reasonable caution in believing that an offense had been committed, and whether at that time the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man into believing that the movant had committed or

was committing an offense . . . It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved."

Here, officers had information from Mrs. Creswell that her money had been stolen in a "pigeon drop" scheme in which one woman had been caught and another named Mildred (defendant) had gotten away. Mrs. Creswell had described Mildred and her car in detail. The officers knew Ida had been caught and had asked to call Room No. 6 of the Rainbow Motel to get clothing. When the Missouri officers arrived at the motel they saw a white Plymouth bearing a Texas license plate. The motel operator told them this car had just recently returned. Outside of Room 6 the officers heard the conversation about bondsmen being on the way. At this point an officer knocked and one of the occupants opened the door.

*Maxwell* supports the state's theory of probable cause to make the arrest. The officers, acting as reasonable and prudent men—not legal technicians—had probable cause to believe a crime had been committed and, after considering the facts and circumstances then available, reasonably believed that one of the perpetrators was in the motel room, thereby rendering lawful the warrantless arrest of defendant.

■ As to police seizure of the tablet and play money, upon entering Room 6 two officers saw a man pick up a tablet and throw it into an open closet. After the occupants were arrested, one officer looked inside the open closet and found the tablet and packs of play money on the floor. The state contends this was justified because the items were not seized in a search but because they were within plain view, citing *State v. Collett*, 542 S.W.2d 783[5] (Mo. 1975).

We must decide whether seizure of the tablet and play money was reasonably justified. Requirements to satisfy the plain view doctrine are considered in *Collett*: "Plain view alone is not enough to justify a warrantless seizure. It is necessary that (1) the evidence be observed in plain view while the officer is in a place where he has a right to be, (2) the discovery of the evidence be inadvertent and (3) it is apparent to the police that they have evidence before them." Those three requirements were met here. Compare the factually similar case of *United States v. Riso*, 405 F.2d 134 (7th Cir., 1968), cert. den., 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1968).

We hold the trial court did not err in admitting the tablet and play money into evidence, and now consider defendant's challenge to the admission of her purse and contents into evidence.

After defendant was arrested in the motel room, officers searched for weapons. Defendant's purse, seen in a chair by the door, was seized and searched, revealing her driver's license, social security card and a wallet with $620 in currency. This was a lawful arrest based on a probable cause. The warrantless search here is comparable to that in *State v. Brasel*, 538 S.W.2d 325 (Mo.1976), where defendant was arrested in a motel room. Police searched his attache case and drugs from the case were admitted into evidence. The court held the search came within the exception to the warrant requirement which allows officers to search for objects in the immediate area of the accused when arrested. In our case there is no testimony as to just how far the purse was from the defendant when she was arrested and the purse was seized, but the room in the motel was small and crowded.

■ As the court pointed out in *Brasel* the search is lawful if there is nothing in the record to show it was impossible for the defendant to get at the object searched. In our case, as in *Brasel*, there was no indication the police were so positioned as to make it impossible for defendant or one of the other suspects to get to the purse and retrieve a weapon or incriminating evidence. We conclude that the seizure of the purse and its contents was legal because it

was found in a search incident to lawful arrest.

Judgment affirmed.

SMITH and McMILLIAN, JJ., concur.