**Ida Marie HINKEL, Appellant,**

v.

**ANCHORAGE, a Municipal
Corporation, Appellee.**

No. 4508.

Supreme Court of Alaska.

Oct. 24, 1980.

Joseph A. Kalamarides, Eckert, Kalamarides & Associates, Anchorage, for appellant.

Donald L. Starks, Asst. Municipal Prosecutor, and Theodore Berns, Municipal Atty., Anchorage, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

MATTHEWS, Justice.

On February 26, 1978, Anchorage police officer William Thompson witnessed an automobile accident involving Ida Marie Hinkel. Hinkel's vehicle, traveling at a high rate of speed, ran a red light and smashed into a vehicle in the intersection.

Thompson first assisted the driver of the other vehicle. He then turned his attention to Hinkel who was still sitting in her car in the middle of the street. Thompson asked Hinkel to show him her driver's license and to get out of the car. Both requests were refused. He then advised Hinkel that if she did not cooperate she would be placed under arrest. The officer then opened the right front door of the vehicle and asked her to step out of the car. She again refused. Thompson advised her that she was under arrest, took hold of her and her purse which was next to her on the front seat, and proceeded to pull her out of the vehicle. In the course of the struggle the purse was left in the vehicle. Hinkel was escorted by Thompson to the back seat of his patrol car.

Shortly thereafter a wrecker appeared in response to Thompson's call. Another policeman, Officer Cox, also arrived and began to assist the wrecker driver. Cox took Hinkel's purse from the vehicle and brought it to Thompson in the patrol car, remarking that the purse was quite heavy. Thompson opened the purse and discovered that it contained a loaded handgun.

Thompson testified that the purse was taken from Hinkel's vehicle because it was going to be towed away and that it would have been normal procedure to return the

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

purse to a person under arrest in Hinkel's position, but not without first searching it.

Hinkel was subsequently charged with carrying a concealed weapon in violation of an Anchorage Municipal ordinance, and with reckless driving. The district court granted her motion to suppress the handgun. The Municipality petitioned for review and the superior court reversed. Hinkel was then convicted of the concealed weapon charge after a jury trial. She has appealed from that conviction, claiming that the search of her purse was unlawful.

A search conducted incident to an arrest is an exception to the general rule that no search is lawful without a warrant.[1] The question for decision in this case is whether the search of Hinkel's purse falls within that exception.

■ A container on the person of an arrestee at the time of the arrest may be seized, opened, and searched as an incident to the arrest, *Middleton v. State*, 577 P.2d 1050, 1055 (Alaska 1978); *McCoy v. State*, 491 P.2d 127, 139 (Alaska 1971), unless the container is too small to contain a weapon and the arrest is for a crime, such as reckless driving, for which no evidence could exist in the container. *Middleton v. State*, 577 P.2d at 1055; *Zehrung v. State*, 569 P.2d 189, 199–200 (Alaska 1977). This is so even though it is not strictly necessary to open a closed container found on the person of one who is arrested in order to protect the arresting officer from the use of a hidden weapon or to prevent the destruction of evidence. These goals can ordinarily be accomplished simply by seizing the container and removing it from the reach of the arrestee. The most complete discussion of this point is found in *McCoy v. State*, 491 P.2d 127, 131–39 (Alaska 1971).

In *McCoy*, the defendant was arrested for attempting to use a forged airline ticket. He was taken to the police station and while in an interrogation room a package was found in his jacket which he had draped over the back of the chair in which he was seated. The package was opened without a warrant and found to contain cocaine. The contention was made that the two reasons justifying searches incident to arrests, protecting the arresting officer and preventing the destruction of evidence, suggested by Mr. Justice Frankfurter in his dissent in *United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) and relied on by the majority in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), serve as limitations on searches of the person of the arrestee as well as those of the area within his immediate control. Justice Erwin, writing for this court, considered the argument and rejected it:

> Our dissenting brothers suggest that Frankfurter's twin rationales also supply the analysis for judging the propriety of searches of the arrestee's *person* as well as his environs. They reason that after the officer had taken possession of the packet there was no danger that McCoy might remove from it a weapon, an implement of escape, or destructible evidence. Consequently, they argue, the exigency justification of the search evaporated and the warrant requirement attached.
>
> We do not believe that this is a correct interpretation of *Chimel*. While it is clear from *Chimel* that the twin rationales suggested by Frankfurter supply the appropriate analytic scheme to define the area "within [the arrestee's] immediate control," it by no means follows that they also supply the appropriate analysis for limiting searches of the arrestee's person.... *Chimel* was concerned not with searches of the person, but with the wide ranging warrantless searches of dwellings which *Rabinowitz* had legitimized....
>
> ... [T]he Court did not intend to limit the intensity of searches of the person incident to a lawful arrest but was concerned instead only with limiting searches of the area surrounding him when he was arrested....

1. *Middleton v. State*, 577 P.2d 1050 (Alaska 1978); *Zehrung v. State*, 569 P.2d 189 (Alaska 1977); *Schraff v. State*, 544 P.2d 834 (Alaska 1975); *McCoy v. State*, 491 P.2d 127 (Alaska 1971).

... Searches of the person, on the other hand, have their own inherent physical limitations. Thus, there is less danger that this exception to the warrant requirement will become unrestrained.

491 P.2d at 133–4 (footnotes omitted). The court in *McCoy* also concluded that the exigencies of the search were to be judged at the time of the arrest rather than at the time that the item is opened:

The exigent circumstances were clearly present when the packet was in McCoy's possession at the time of arrest; the search once justifiable, does not violate the fourth amendment remedy because the exigency is removed at the time the search is conducted.

491 P.2d at 137 (footnote omitted).

We have most recently reaffirmed *McCoy* in *Middleton v. State*, 577 P.2d 1050, 1055 (Alaska 1978). Middleton was arrested for armed robbery of a liquor store, taken to the police station, and placed in an interrogation room. Twenty minutes to a half hour later she was asked to take everything out of her pockets and place them on a table. She placed her billfold there and a policeman took it and searched it. He found a folded piece of paper which he opened and discovered that it contained a sketch of the floor plan of the premises which had been robbed. Middleton argued that this search was unlawful because once the billfold was in the possession of the police there was no justifying exigency, since there was then no danger that its contents could be destroyed. We unanimously rejected this argument on the authority of *McCoy*. 577 P.2d at 1055.

Certain containers in the possession of one who is arrested and which are located in the immediate area of the arrest may be seized but not searched under the incident to arrest exception. We so held in *Metcalfe v. State*, 593 P.2d 638, 640 (Alaska 1979). Metcalfe was arrested while carrying a box in his arms. He was taken to the police station where the box was searched. We

held that the search of the box could not be upheld under the incident to arrest exception because no exigent circumstances justified it. In so holding we quoted the following from *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 551 (1977):

Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

593 P.2d at 640.

The question in this case is whether the search of Hinkel's purse is to be governed by *Middleton* and *McCoy* or by *Metcalfe*. The answer, we believe, is suggested by the language quoted from *Chadwick* in *Metcalfe*, set forth above, which pointedly excepts personal property "immediately associated with the person of the arrestee" from the requirement that an exigency must exist to justify a search.

■ This language must mean that containers found in clothing pockets may be searched. In our view it also suggests that containers such as purses which are often worn on the person and generally serve the same function as clothing pockets are also excepted from the strict exigency requirement. It would be possible, of course, to treat containers found in clothes pockets, such as billfolds, differently from items such as purses which are not carried in pockets but serve the same purpose. However, we can think of no reasons to justify such a distinction. We conclude that Hinkel's purse was property immediately associated with her person and, therefore, was properly searched incident to her arrest.[2]

Our conclusion is supported by a recent case of the Court of Appeals for the Seventh Circuit, *United States v. Berry*, 560

---

**2.** This holding is consistent with the limitations expressed in *McCoy v. State*, 491 P.2d 127, 138 (Alaska 1971) and *Zehrung v. State*, 569 P.2d

189, 199–200 (Alaska 1977) referred to at page 1070, *supra*, because the search involved here was for weapons not evidence.

F.2d 861 (7th Cir. 1977), *vacated on other grounds,* 571 F.2d 2 (7th Cir. 1978), *cert. denied,* 439 U.S. 840, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978). The court noted the distinction made in *Chadwick* between personal property which is immediately associated with the person of the arrestee and that which is not:

> The court appears to be distinguishing—for purposes of whether a warrant is required to search property in police custody that was seized from a suspect at the time of the arrest—between searches of an arrestee's clothing, as in *Edwards,* or items that were in his pockets, as in *Robinson,* from searches of other possessions, such as luggage, that were within his immediate control. Warrantless searches of the former items after they come in police custody can be characterized as searches of the arrestee's person because they do not involve any greater reduction in the arrestee's expectations of privacy than that caused by the arrest itself. Warrantless searches of the latter items, however, affect privacy interests other than those reduced by the arrest itself and thus can be conducted only so long as the danger exists that the arrestee might gain access to the property to seize a weapon or destroy evidence.

560 F.2d at 864. The item seized in *Berry* was an attache case. The court concluded that it was more like luggage than property immediately associated with the person and indicated that a purse would be within the latter category:

> Returning to the instant case, we believe that the search of the attache case is better characterized as a search of possessions within the arrestee's immediate control than as a search of his person. First,

as a matter of common usage, a briefcase is not an item carried on an individual's person in the sense that his clothing or items found in his pockets are. Second, as was true of the footlocker in *Chadwick,* the privacy interest in the attache case here centered on its contents rather than on the container itself. A search of the interior constituted "a far greater intrusion into fourth amendment values" than either Wilson's arrest or the impoundment of the case. Finally, unlike a purse that might be characterized as "immediately associated with the person of the arrestee" because it is carried with the person at all times, the attache case here was more like luggage in that Wilson was not carrying it when he left the building, but rather removed it from an auto trunk immediately before his arrest.

*Id.*[3]

As we have indicated there is a line to be drawn between containers which may be searched incident to an arrest and those which may not be, once any danger that the arrestee may gain access to the container to seize a weapon or destroy evidence no longer exists. Such a line is required if *Middleton* and *McCoy* on the one hand and *Metcalfe* on the other are to be reconciled. We think such a reconciliation is possible and adopt the approach suggested by *Chadwick* to accomplish it.

We recognize, however, that it may legitimately be questioned whether the line drawn is sufficiently perceptible to be observed in practice. Ultimately, of course, experience will give us the answer. We think that the only logical alternative to today's decision would be to overrule *Mid-*

---

3. Other authorities supporting our view that a purse is an item immediately associated with the person are: *United States v. Moreno,* 569 F.2d 1049, 1052 (9th Cir. 1978), *cert. denied* 435 U.S 972, 98 S.Ct. 1615, 56 L.Ed.2d 64 (1978); *United States v. Venizelos,* 495 F.Supp. 1277 (S.D.N.Y.1980); *Sumlin v. State,* 587 S.W.2d 571, 577 (Ark.1979) (en banc); *People v. Harris,* 164 Cal.Rptr. 296, 303, 105 Cal.App.3d 204 (Cal.App.1980); *People v. Flores,* 160 Cal.Rptr. 839, 844, 100 Cal.App.3d 221 (Cal.App.1979); *State v. Sabater,* 601 P.2d 11, 13–14 (Kan.App.

1979), *cert. denied* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 272 (1980); *State v. Thompson,* 596 P.2d 174, 179 (Kan.App.1979); *Dawson v. State,* 40 Md.App. 640, 395 A.2d 160, 167 (1978); *State v. Webb,* 560 S.W.2d 318 (Mo. 1977). *Contra United States v. Farrar,* 470 F.Supp. 128, 131 (S.D.Miss.1979); *People v. Redmond,* 73 Ill.App.3d 160, 28 Ill.Dec. 774, 780–85, 390 N.E.2d 1364, 1370–75 (1979); *Ulesky v. Florida,* 379 So.2d 121, 125–26 (Fla.App. 1979).

*dleton* and *McCoy.* We could then adopt the rule that no container found on the person of an arrestee could be searched without a warrant so long as the alternative of seizure and removal from the reach of the arrestee were available. If the arrestee desired the return of the container prior to his release from custody he could consent to its search. While such a rule would not be difficult to follow, we are not persuaded that overruling *Middleton* and *McCoy* is necessary or desirable.

AFFIRMED.

RABINOWITZ, Chief Justice, dissenting, with whom CONNOR, Justice, joins.

I cannot agree that the warrantless search of Hinkel's purse was a constitutional search incident to a valid arrest. In my opinion the search conducted by Officer Thompson was not within the narrowly drawn exception to the warrant requirement for searches incident to arrest. Thus, I would hold under both the Alaska and Federal Constitutions that the search was in violation of Hinkel's rights against unreasonable searches and seizures.[1]

The United States Supreme Court has recently, in *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), summarized the principles behind the protection of the Fourth Amendment:

> The Fourth Amendment protects the privacy and security of persons in two important ways. First, it guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' In addition, this Court has interpreted the Amendment to include the requirement that normally searches of private property be performed pursuant to a search warrant issued in compliance with the Warrant Clause. In the ordinary case, therefore, a search of private property must be both reasonable and pursuant to a properly issued search warrant. The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment.... The prominent place the warrant requirement is given in our decisions reflects the 'basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of government.' By requiring that conclusions concerning probable cause and the scope of a search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime,' we minimize the risk of unreasonable assertions of executive authority.

> Nonetheless, there are some exceptions to the warrant requirements. These have been established where it was concluded that the public interest required some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search. Thus, a few 'jealously and carefully drawn' exceptions provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate. But because each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and 'the burden is on those seeking the exemption to show the need for it.' Moreover, we have limited the reach of each exception to that which is necessary to accommodate the identified needs of society.

442 U.S. at 757–60, 99 S.Ct. at 2589–91, 61 L.Ed.2d at 241–42 (footnotes and citations omitted).

In *State v. Daniel,* 589 P.2d 408, 416 (Alaska 1979), this court reiterated its previous observations that the protection provided by the Alaska Constitution against unreason-

---

1. Federal Constitution, Fourth Amendment; Alaska Constitution art. I, § 14.

able searches and seizures goes beyond that afforded under the Federal Constitution and that "protection of the interiors of closed luggage, briefcases, containers and packages transported in a vehicle reflects fundamental expectations of privacy which Alaska society would recognize as reasonable." This protection is clearly implicated in the subject warrantless search of Hinkel's purse, which was found lying on her car seat subsequent to her arrest.

In the case at bar, this court must decide whether the purse is within the scope of the narrowly drawn exception to the warrant requirement set forth in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), for a search of the arrestee's person and the area within the arrestee's immediate control. The majority concludes that the purse in this case was indeed within Hinkel's immediate control at the time of the search.

Similar arguments were advanced by the government in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), in which the Court concluded that a footlocker taken from the trunk of the arrestee's car was not within the immediate control of the arrestee:

> [T]he Government urges that the Constitution permits the warrantless search of any property in the possession of a person arrested in public, so long as there is probable cause to believe that the property contains contraband or evidence of crime. Although recognizing that the footlocker was not within respondents' immediate control, the Government insists that the search was reasonable because the footlocker was seized contemporaneously with respondents' arrests and was searched as soon thereafter as was practicable. The reasons justifying search in a custodial arrest are quite different. When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless 'search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' *Chimel v. California*, 395 U.S. at 763, 89 S.Ct. 2034, 23 L.Ed.2d 685. *See also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 [44 Ohio Ops.2d 383] (1968).
>
> Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the 'immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' *Preston v. United States*, 376 U.S. at 367, 84 S.Ct. 881, 11 L.Ed.2d 777, or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.
>
> Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency. Even though on this record the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn. In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the

line at the point where the property to be searched comes under the exclusive dominion of police authority. Respondents were therefore entitled to the protection of the Warrant Clause with the evaluation of a neutral magistrate, before their privacy interests in the contents of the footlocker were invaded.

433 U.S. at 14–16, 97 S.Ct. at 2485–86, 53 L.Ed.2d at 550–51 (footnotes and citations omitted). This analysis is fully applicable to the case at bar.

Officer Thompson first observed Hinkel when her car ran a red light and struck another vehicle in the intersection. When Thompson approached the car, Hinkel refused to exit her vehicle or to produce a driver's license. Thompson advised her she would be arrested if she continued to refuse to cooperate. Hinkel persisted in her refusal and was then arrested. At this point, Hinkel's cloth purse was lying on the front seat next to her. In the process of arresting Hinkel, Thompson took hold of her purse and a struggle ensued. The purse remained in the car while Hinkel was placed in the back seat of Thompson's patrol car. While Thompson proceeded with the paperwork on the accident, Officer Cox arrived and began to secure Hinkel's vehicle in preparation for its removal.[2] Cox removed the purse and gave it to Thompson, noting that it was "awful heavy." Thompson then opened the purse and discovered that it contained a loaded revolver. During the arrest, Thompson had recognized appellant as Ida May Hinkel; he was aware that Hinkel had been arrested several times for prostitution and that she was a suspect in certain armed robberies and assaults.

If Hinkel had had the purse in her reach at the time of the arrest, and if the officer had seized the purse at the time of arrest, then I think the officer would have had ample cause, pursuant to the arrest, to search the purse. Concern for the officer's own safety and a need to ascertain whether an arrestee has access to a weapon is one of the two rationales behind this particular exception to the warrant requirement.[3] In this case, Thompson's knowledge of Hinkel's prior criminal record gives ample support for such a search. But I would find that this rationale is no longer applicable once Hinkel had been removed from her vehicle and the purse was no longer within her immediate control. The purpose of the exception allowing a search incident to an arrest is to allow officers to take reasonable precautions to prevent an arrestee from either seizing a weapon or destroying evidence. The purse left in Hinkel's vehicle was not within her control in any sense. Nor were there other exigent circumstances that would warrant a search of the purse. The item searched here was a normal woman's purse and not a gun case or other container which, by its nature, fails to support any reasonable expectation of privacy because the contents can be disclosed or suggested by the item's outward appearance. *See Arkansas v. Sanders*, 442 U.S. 753, 764 n.13, 99 S.Ct. 2586, 2593 n.13, 61 L.Ed.2d 235, 245 n.13 (1979). Nor was there a passenger in Hinkel's car, which might have created a justifiable apprehension in the police officer that the passenger might try to destroy evidence or use a weapon. Further, Hinkel had already been arrested and was safely secured for transportation to the police station when her purse was searched. This case is thus distinguishable from cases in which the arrestee or a passenger was to be returned to his or her vehicle thereby creating an apprehension that the person might grab a weapon or attempt to destroy evidence that might exist in the vehicle.[4]

---

**2.** Thompson testified that while the vehicle was not technically impounded, the police department was responsible for the vehicle and "if the person is arrested and removed, the property must be secured to the best of our ability."

**3.** *See generally* W. LaFave, 2 Search and Seizure § 5.2(d), at 277-81 (1978).

**4.** *See, e. g., Brown v. State*, 358 So.2d 596, 601 (Fla.App.1978) (search of a car on suspicion that "an accessible weapon is hidden" in the vehicle is permissible "even though the occupants have been temporarily removed," but only if "it appears that the suspect should be allowed to return to his vehicle"). *See also* W. LaFave, 3 Search and Seizure § 9.4, at 136–37 (1978).

The purse was within the exclusive control and supervision of the police and, thus its search was not incident to the arrest. The only justification, then, for searching the purse would be for inventory purposes. In this case, the second officer could reasonably have been concerned over liability in transporting the purse with the vehicle. Given this concern, it was proper for the second officer to attempt to return the purse to its owner or, at least, to Officer Thompson.

If the purse was being returned to Hinkel's custody, then the concerns that are present when a search is made incident to arrest again arise—the purse would once again be in the possession and immediate control of the arrestee. If it contained, as this purse did, a weapon, then the arrestee may have tried to escape or injure the officer. Thus, it is reasonable, before an officer places any such object in the control of an arrestee, that the object be searched for weapons. However, in this case, there was no justification for returning the purse to Hinkel and the record does not reflect that Hinkel requested the return of her purse. The officer, upon such a request, can insist that the arrestee consent to a search of the item prior to its return. But absent such a request, the officer who retains exclusive control over an item such as a purse is not justified in searching it. If the officer has suspicions that the item contains a weapon, as Thompson said he had when he felt a heavy object in the purse, then the officer should keep the item out of the victim's control and obtain a warrant to search the item once it has been transferred to the police station.

This was the conclusion reached by the district court judge who originally granted the motion to suppress:

There's no question whatsoever that—that an officer can search for weapons incident to an arrest and for his own protection. . . . But the problem you have here is you have a confined space, that being a purse, and that purse being totally within the—the control of the officer. Can he exercise his good judgment and open the purse and find what he has reasonable belief to be a weapon? Yes or no. I don't believe he can. And, particularly when he can keep that purse in his possession and, as the defendant is being booked as in this case, bring it to the jail and at that point, have legally—a legal inventory made of the purse and that point charged or he can seek a search warrant to inquire into that space.

I am in agreement and find that this search was improper.

The majority rely on dicta in *United States v. Berry*, 560 F.2d 861, 864 (7th Cir. 1977), *vacated*, 571 F.2d 2 (7th Cir. 1978), *cert. denied*, 439 U.S. 840, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978), to suggest that since a purse is generally carried on the person it is therefore subject to search incident to arrest regardless of its actual location. I cannot agree with this. A search of a purse carried on the person is certainly warranted "incident to arrest" when the purse is literally within the person's immediate control such that the person has access to objects in the purse as he or she would to objects in his or her pockets. However, a very different situation is presented under the facts of this case. At the time of seizure, Hinkel's purse was not within her control and it would have been impossible for her to extract anything from it.

An almost identical situation occurred in *Ulesky v. State*, 379 So.2d 121, 125–26 (Fla. App.1979). In *Ulesky*, a police officer, upon seeing the defendant narrowly avoid a traffic accident, stopped her, found her in possession of marijuana and arrested her. After the police officer placed the defendant in custody in the back of his patrol car, he returned to the truck and searched her purse which she had left in the cab. The court concluded that such a search was not proper incident to arrest:

The only two reasons for allowing a warrantless search incident to a lawful arrest are to prevent the arrestee from seizing a weapon and to prevent the arrestee from concealing or destroying evidence. No other considerations are relevant. *Chimel v. California, supra.* Thus, the search must be limited to the area within the immediate control of the arrestee at the time of the search, not at the time of the arrest. Here, once appellant was placed in the patrol car and thereby separated from her purse, neither of the justifications for the search incident to arrest exception were present. There was no longer any danger that appellant would obtain a weapon from the purse. Similarly, there was no danger that appellant would conceal or destroy any items of evidence which might have been in the purse. The purse simply was no longer within appellant's 'immediate control.'

*Id.* at 126. I would similarly find the search improper in this case.[5]

5. I think it appropriate to note my agreement with the court's observation that an alternative to the decision reached today would be to overrule *McCoy v. State*, 491 P.2d 127, 138 (Alaska 1971). For the reasons expressed in my dissent in *McCoy*, I would embrace this alternative and adopt the suggested rule "that no container found on the person of an arrestee could be searched without a warrant so long as the alternative of seizure and removal from the reach of the arrestee were available."

Implicit in the foregoing is my conclusion that it is unnecessary to overrule *Metcalfe v. State*, 593 P.2d 638 (Alaska 1979), as a predicate to adoption of this alternative.