Ronald WILBURN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3337.

Court of Appeals of Alaska.

Aug. 9, 1991.

Marcia E. Holland, Asst. Public Defender and John B. Salemi, Public Defender, Anchorage, for appellant.

Valerie Van Brocklin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

## OPINION

COATS, Judge.

Ronald Wilburn was convicted, based upon his plea of no contest, of misconduct involving a controlled substance in the fourth degree, a class C felony. AS 11.71.-040(a)(3)(A). In entering his no contest plea, Wilburn reserved his right to raise an appellate issue. *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). Wilburn now appeals, arguing that Superior Court Judge Jay Hodges erred in denying his motions to suppress evidence. We affirm.

On April 2, 1989, Ed Willis, a retired Fairbanks police officer, saw a man sitting in a car in a parking lot. The man was later identified as Wilburn. Willis saw Wilburn use items and engage in activities that led him to believe that Wilburn was using illegal drugs. Willis then called the Fairbanks Police Department and reported his observations.

Officer David Kendrick received a dispatch to investigate this situation. The dispatcher told Kendrick that the car was parked against a bar, Tommy's Elbow Room, and was pointed outward. Kendrick testified that he could not recall if the dispatcher gave him a physical description of the man in the car. He also did not recall whether the dispatcher gave him a description of the car.

When Kendrick arrived at the parking lot, he saw Wilburn in his car. As Kendrick approached the car, he saw Wilburn sitting in the driver's seat. Wilburn was "moving rapidly around the driver's seat area." He was moving his hands in and out of his pocket, and was looking up and

* Sitting by assignment made pursuant to article     IV, section 16 of the Alaska Constitution.

back down very quickly. Kendrick saw smoke coming out of the car, and some ashes that were "kind of floating in the air." He originally assumed that Wilburn was smoking marijuana, but when he did not smell the odor of marijuana, he suspected that Wilburn was smoking "crack" cocaine. As Kendrick approached the car, he saw a razor blade, lighter, burnt matches and burnt material on the passenger's side of the car.

Officer Nancy Coffey was also dispatched as a back-up unit. When she arrived, Kendrick was talking to Wilburn, who was still seated in the driver's seat. Coffey went to the passenger's side of the car. In the front of the car, she saw burnt matches, some small rags with burnt, singed edges, and a lighter. She also saw a film canister in the back seat area.

Kendrick asked Wilburn to get out of the car. Wilburn was fidgeting and appeared to be nervous. Kendrick testified that he did not believe, at that time, that he had probable cause to arrest Wilburn for the use of drugs. Kendrick told Wilburn that he was going to pat him down; Kendrick testified that he searched Wilburn for weapons and/or evidence of drug use.

When Kendrick went to do the pat-down search, Wilburn put his hands in his pockets. Wilburn told both officers that he was nervous, that he needed a minute to calm down, and had just smoked a little "pot." The officers told him that there was no rush, they only wanted him to take his hands out of his pockets so they could conduct a pat-down search. Wilburn's fist was clenched inside of his pocket.

Wilburn did not take his hands from his pockets. Kendrick suggested that they place Wilburn in the back seat of the patrol car. When they reached the patrol car, Wilburn became extremely nervous. He was trying to pull away from the officers, stating that he was nervous and needed to calm down, and was turning his head back and forth. Coffey testified that Wilburn was a strong man and difficult to control.

When they reached the patrol car, Kendrick was able to get Wilburn's left hand out of his pocket. Something fell out of his hand, and Kendrick put a handcuff on that arm in order to control Wilburn. The item which fell on the ground was a mouthpiece to a pipe. Wilburn's right hand was still in his pocket. When he finally took his hand out, his fist was still clenched. Wilburn refused to open his hand. When Coffey smashed his knuckles with her cubaton, Wilburn opened his hand and a metal pipe fell to the ground. Wilburn was then handcuffed, and placed in the back of the patrol car.

The pipe and mouthpiece contained no marijuana; there was a white residue in the pipe. The pipe looked like the type which was used for smoking crack. At that point, Kendrick testified that he believed he had probable cause to arrest Wilburn; however, he did not formally arrest Wilburn at that time.

After putting Wilburn in the patrol car, the officers returned to his car. They again saw the items in the front seat. They opened the back door of the car and saw a glove on the floor behind the front seat. This glove was not visible without opening the car door. Coffey testified that it appeared to be some type of winter gear; Kendrick recognized it as a glove. Kendrick also saw a film container on the back seat.

The glove was on the floorboard behind the front seat within arm's reach of Wilburn in the driver's seat. When Kendrick picked up the glove, it was apparent that it was full of items. Kendrick emptied the glove. It contained a film container with white powder in it, a lighter, matches, a piece of playing card, some stocking, a pen with the internal ink portion removed (similar to items used to inhale cocaine), some steel wool, a piece of paper, a small coke spoon, and two glass vials. Kendrick testified that these items constituted a "coke kit."

Wilburn and the seized evidence were taken to the police station. At the police station, Wilburn was arrested for possession of cocaine. Kendrick then field tested some of the items seized to determine if they contained drugs. The test results were negative. Kendrick called the district

attorney's office to ask how to proceed with this case. Assistant District Attorney Bill Murphree advised Kendrick to go ahead with the arrest. Later, laboratory tests on the brass pipe, the film canister, the two glass tubes and the small coke spoon indicated the presence of cocaine.

Wilburn was indicted for one count of possession of cocaine in violation of AS 11.71.040(a)(3)(A). Wilburn filed motions to suppress the pipe and the items found in the glove, on the grounds that the police illegally subjected him to a pat-down search and illegally seized the green glove without a warrant. Judge Hodges denied the motions to suppress.

Judge Hodges found that, under the circumstances, the initial pat-down was reasonable. The court stated that the circumstances making it reasonable were that "someone who is utilizing drugs and a motor vehicle constitutes an immediate danger—or, a potential immediate danger to the public." Judge Hodges stated that, after the pipe was discovered, the police had sufficient grounds to arrest Wilburn. Although Wilburn was not formally placed under arrest at this time, the court found that the police in effect arrested him when they placed him in the police car. The court found that the police seizure of the glove and its contents was reasonable under the circumstances.

Wilburn subsequently entered a *Cooksey* plea to the charge. At the change of plea hearing, there was some discussion as to which motions the state agreed would be clearly dispositive of the case. Although the dialogue is somewhat confusing, it seems that the parties agreed that the state would proceed with the charges against Wilburn only if it could introduce the cocaine found both in the pipe and in the items discovered in the car following Wilburn's arrest. At the hearing, the state agreed it would not proceed with a charge against Wilburn if the state could only admit the amount of cocaine found in the pipe. This appeal followed.

On appeal, the state argues that under *Oveson v. Anchorage*, 574 P.2d 801 (Alaska 1978) and *Cooksey*, 524 P.2d at 40 (Alaska 1974), this court should dismiss this case for lack of jurisdiction because the suppression issues preserved for appeal are not clearly dispositive of the case.[1]

The state points out that only the first issue—Wilburn's claim that the pat-down search was illegal—is dispositive of the case. Assuming that the pat-down was legal, the record does not show that the state would be unable to proceed against Wilburn based only upon the cocaine in the pipe, even if the police search of Wilburn's car and the items in the car was improper. The state therefore argues that Wilburn may not appeal his claim concerning the car search because that issue is not dispositive.

The state's argument brings us to a recurring issue. We frequently find that the state represents in the trial court, at the entry of the defendant's plea, that the issue which the defendant wishes to preserve is dispositive under *Oveson*. However, later on appeal, the state appellate division contends that we should dismiss the appeal because the record does not show that the issue is dispositive.

In the instant case, we agree with the state that the issue concerning the legality of the pat-down search is dispositive, but that the issue concerning whether the police could search the car is not. However, under the circumstances of this case, we believe that we should grant a petition for review as to the second issue and decide it. It appears to us that this will advance the litigation in this case, particularly since it appears that we must decide the first issue since it is dispositive. The issues are fully briefed, and the case has been considerably delayed. We feel that the state has little ground to protest, having helped create the current situation by originally agreeing that the issues in question were dispositive, and then taking a contrary position on appeal.

---

1. The state initially filed a motion to dismiss this appeal; an opposition and a reply to that opposition were subsequently filed. On November 6, 1990, this court entered an order stating that it would defer a decision on the motion to dismiss pending briefing on the merits.

■ Wilburn first claims that Judge Hodges erred in finding that Kendrick's and Coffey's pat-down search was a valid search pursuant to an investigatory stop. On appeal of a denial of a suppression motion, this court must view the evidence in the light most favorable to the prevailing party. *Ahkivgak v. State,* 730 P.2d 168, 171 (Alaska App.1986). We will reverse the trial court's factual findings only if they are clearly erroneous. *Id.* Reversal is proper only where there is no substantial evidence supporting the trial court's findings. *Id.* As to disputed factual issues which are not expressly resolved by findings of the trial court, this court must view the evidence in the record in the light most favorable to the prevailing party. *Hubert v. State,* 638 P.2d 677, 683 (Alaska App. 1981). To the extent that Wilburn does not dispute the facts, but merely argues that they constitute an illegal pat-down or frisk, his argument presents a question of law on which this court is entitled to make an independent evaluation. *Juneby v. State,* 641 P.2d 823, 834 (Alaska App.1982).

■ According to the record, the dispatcher informed Kendrick that someone "was watching a subject sitting in a car and [the subject] appeared as though he was using some type of drugs." Although the witness who reported this incident to the police was a retired police officer, it is not clear from the record that the arresting officers were aware of this fact.

When Kendrick approached Wilburn's car, he saw Wilburn shifting around, and saw smoke and ashes coming out of the car. The officers saw the following items on the passenger side of the car: burnt matches, some cloth pieces with burnt, singed edges, a lighter, and a razor blade. The police did not directly testify at the suppression hearing as to the significance of·these items. However, Kendrick later testified that the items found in the glove—a film container with "white powder in it, a lighter, some matches, a piece of playing card, some stocking, a pen, some steel wool items, and piece of paper—were used to consume cocaine." Because the items in the glove duplicated some of the

items the police saw on the passenger side, it is a reasonable inference that the items in the front of the car may have been used to smoke cocaine. Kendrick testified that he suspected that Wilburn was smoking crack. Kendrick then asked Wilburn to get out of his car and then told Wilburn that he was going to do a pat-down search. At that point, Wilburn put his hands in his pockets. As to these facts, Judge Hodges stated:

> In plain sight in the vehicle there was a film canister, a razor blade, a lighter, burnt matches, and burnt material. All of which, in light of the information Officer Kendrick had, would lead a reasonable person to feel that drugs were being smoked.

We believe that Judge Hodges could properly conclude that the information relied upon by Kendrick supported his actions in requiring Wilburn to get out of his car and conducting the pat-down search. The officer could reasonably conclude that Wilburn was smoking crack in his car. An investigative stop is permissible under the Alaska Constitution if "the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred." *Coleman v. State,* 553 P.2d 40, 46 (Alaska 1976). The fact that Kendrick reasonably believed that Wilburn was smoking crack cocaine in an automobile appears to us to meet this standard.

Wilburn points out that Kendrick did not specifically testify that he believed that Wilburn might be armed and dangerous. Wilburn therefore contends that the record does not establish any basis to justify the police pat-down search. However, we have not previously required the police to specifically establish that they feared the defendant was armed in order to justify a pat-down search. *See State v. G.B.,* 769 P.2d 452, 456–57 (Alaska App.1989); *Brown v. State,* 684 P.2d 874, 876 (Alaska App.1984). In the instant case, Kendrick was conducting an investigatory stop of a person in control of an automobile who he believed was committing a felony offense of possession of cocaine, and who he reasonably

believed was using crack cocaine at the time of the stop. We believe that under these circumstances, Judge Hodges could properly conclude that Kendrick's pat-down search of Wilburn was reasonable. We find no error.

■ Judge Hodges found that, once the police had discovered the pipe with the trace of cocaine in it, the police had probable cause to arrest Wilburn for possession of cocaine. He then concluded that the search of Wilburn's car was reasonable. We believe that Judge Hodges' ruling is supported by *Dunn v. State*, 653 P.2d 1071, 1079–83 (Alaska App.1982). In *Dunn*, we stated:

> The rule that emerges from the case law and that must govern the disposition of this case may be restated as follows: upon the lawful, non-pretextual arrest of an individual for a crime, evidence of which could be concealed on the person, a search of the arrestee's person, his clothing and articles which, akin to clothing, are immediately associated with the person of the arrestee may be searched at the time of the arrest, or within a reasonable period thereafter. As long as the search is confined within these limits, it is permissible for officers to open and inspect the contents of any closed containers found, unless, under the circumstances, it could not reasonably be believed that the container would yield a weapon or evidence of the crime for which the arrest was made. This rule is to be based on the relationship between the article searched and the arrestee at the time of the arrest, and must apply regardless of actual access to or control over the container by the accused at the time the search is initiated.

*Id.* at 1082.

Once the police arrested Wilburn, they were entitled to conduct a search incident to the arrest. We believe that the *Dunn* rule allowed the police to search the interior of Wilburn's car to the extent that the items in the car were within Wilburn's reach at the time the police initiated the investigative stop. The record shows that, when Kendrick initiated the investigative

stop, Wilburn was seated in his car. The officers testified that the glove and the film container were in close proximity to Wilburn at that time.

In *Dunn*, relying on *Hinkel v. Anchorage*, 618 P.2d 1069 (Alaska 1980), we stated that the police could search articles of personal clothing which were in the immediate control of the arrestee *at the time of his arrest*. *Dunn*, 653 P.2d at 1082. The glove is an item of personal clothing, and was within the immediate control of Wilburn at the time of the investigative stop. The record shows that the police saw the film container in the car and that it was also in Wilburn's vicinity when the police initiated the investigative stop. The police also testified that film canisters are frequently used to hold drugs. Under these circumstances, we believe that the police were entitled to seize and search the glove and the film container pursuant to *Dunn*.

In *Dunn*, we stated that "[t]his rule is to be based upon the relationship between the article searched and the arrestee at the time of the arrest, and must apply regardless of actual access to or control over the container by the accused at the time the search is initiated." *Id.* In both *Hinkel* and *Dunn*, the courts allowed the police to search items which the defendants left in their cars after the police had removed the defendants from the cars and secured them. *Hinkel*, 618 P.2d at 1071; *Dunn*, 653 P.2d at 1082–83. The courts in those cases did not require the police to leave the defendants within reach of the items in question in order to uphold a search incident to an arrest. Similarly, in cases such as the instant case where an investigative stop quickly ripens into an arrest, a rule requiring the police to determine the exact moment when a person was under arrest would be unpredictable and confusing. In *Hinkel* and *Dunn*, the courts appear to have concluded that the scope of a search incident to an arrest is not controlled by the location of the arrestee after the arrest. Similarly, in the instant case, we do not believe that the scope of the search incident to an arrest should be controlled by where the police move a suspect to during an

investigative stop. We accordingly conclude that Judge Hodges did not err in upholding the search of the glove and the film canister.

The conviction is AFFIRMED.

MANNHEIMER, J., not participating.