Judge MANNHEIMER,
with whom Judge ALLARD joins, concurring.
__ For the reasons I am about to explain, I believe that our supreme court should reexamine its decision in Crawford v. State- and the entire question of what containers are “1mmed1ate1y assomated with the person" of an arrestee.
In 1980, in Hinkel v. Anchorage,[1] our supreme court announced the rule that a search incident to arrest could include the search of a closed container that was "immediately associated with the person" of the arrestee. But during the ensuing thirty-five years, both the supreme court and this Court have substantially expanded the definition of which containers qualify as "immediately associated with the person" of an arrestee.
As originally conceived, the classification of "immediately associated with [the arrestee's] person" applied only to containers that were "akin to clothing." [2] In this early formulation of the test, the phrase "immediately associated" was used in the sense of "[with] nothing coming between; [with] no intermediary[3] - the same concept that underlies such legal phrases as "immediate presence" and "immediate control".
In other words, just as arrestees could hot validly object to a police search of the clothing they were wearing at the time they were taken into custody, warrantless searches of items "Immediately associated" with the ar-restee's person were justified by the notion that a search of these items "[did] not involve any greater reduction in the arrestee's expectations of privacy than [the reduction] caused by the arrest itself," [4]
*403 © But even though a certain type of container might typically be carried by a person, and even though that type of container might typically be used for carrying personal items, these two factors alone did not necessarily mean that the container could be categorized as "immediately associated" with the arres-tee's person. Something else was required: an immediacy and constancy of possession, akin to a person's relationship to the clothing they were wearing, __
This limitation on the seope of "immediately associated" containers is exemplified by the cases dealing with valises and attaché cases, In particular, in United States v. Berry[5] (a case that our supreme court cited approvingly in Hinkel and later in Crawford), the Seventh Cireuit héld that an attaché case or briefcase is not the kind of cloged container that is "immediately associated with the person" of an arrestee-even though attaché cases are designed to be carried in one's hand, and even though they are commonly employed to hold items that are personal to the owner.[6]
As the Seventh Cireuit explained in Berry, an attaché case does not fall within the category of containers "immediately associated with the person" because an attaché case is "not ... carried on an individual's person in the sense that his clothing or [the] items found in his pocket are".[7] The Seventh Circuit concluded that the search of an attaché case was better characterized as "a search of possessions within the arrestee's immediate control" as opposed to "a search of [the arrestee's] person." [8] Thus, the search of the closed attaché case required a warrant.
As part of its explanation of why an at-taché case should not be deemed "immediately associated with the person" of an arrestee, the Berry court remarked that an attaché case was different from a purse because "a purse ... is carried with the person at all times". [9] In other words, the Seventh Circuit viewed purses as equivalent to pockets because pockets are, in essence, interior containers that are carried with the person at all times. - +
The Alaska Supreme Court employed this same analysis in Hinkel v. Anchorage. The issue in Hinkel was whether a woman's purse should be classified as a container "immediately associated with [an arrestee's] person". The court viewed this issue as hinging on whether a purse should be viewed as analogous to a pocket or, instead, analogous to a valise or attaché case. Ultimately, the supreme court concluded that a purse was more like a pocket than a valise or attaché case-and that, therefore, a purse should be considered a container "immediately associated with the person" of the arrestee.[10]
'In reaching this result, the ZZinkel majority approvingly cited (and quoted at length from) the Seventh Cireuit's decision in Berry. Most importantly, the Hinkel majority approved of the distinction drawn in Berry between (1) containers that are merely "within the arrestee's immediate control" at the time of arrest (4.e., containers that can not be opened without a warrant) and (2) containers that are so "immediately associated with the arrestee's person" that a search of these containers constitutes no more than "a search of [the arrestee's] person" incident to arrest.[11]
But when the Hinkel court described this analysis, the court used inexact phrasing that would become a predominant theme of later cases. Specifically, the Hinkel court declared that purses could be searched without a warrant because purses "generally serve the same function as clothing pockets." [12]
This phrasing was unfortunate because it was incomplete, The phrase "generally servels] the same function as clothing pockets" emphasizes the requirement that the container in question be used for holding *404 personal items. But, standing alone, this emphasis on the container's function suggests that attaché cases could be searched without a warrant-the conclusion that the Berry court rejected. .
By phrasing the test as a question of "function", the Hinkel court failed to expressly include the crucial additional requirement that the Berry court emphasized when it declared that attaché cases could not be searched without a warrant: the requirement that the container also be "akin to clothing"-in the sense that the container must, in normal usage, be more or less in continuous physical contact with the arrestee.
There are many types of containers-for example, attaché cases-that are used for carrying personal effects, but not all of these containers should be classified as "immediately associated with the person". As the Berry court emphasized, the requirement of constant and immediate physical possession is the factor that makes a particular type of container "akin to clothing".
In the later case of Wilburn v. State,[13] this Court neglected this requirement of constant and immediate possession-and, in my view, reached the wrong conclusion as to whether a container could be searched without a warrant.
Wilburn involved two items-a cold-weather glove and a film canister-that were found within the arrestee's car, and were within the arrestee's reach at the time of his arrest. The Wilburn court noted that a glove is an article of personal clothing-and the court apparently concluded that this fact, standing alone, was a sufficient justification for finding that the glove was "immediately associated" with the person of the arrestee.[14] But the Wilburn court failed to consider the question of whether a glove is the type of container normally employed for carrying personal ef-feets-which it clearly is not.
And with respect to the film canister, all the Wilburn court said was that the canister was "in Wilburn's vicinity when the police initiated the investigative stop", and that there was testimony that film canisters "are frequently used to hold drugs".[15]
Wilburn was the first Alaska appellate decision to abandon the requirement that a container be "akin to clothing". By doing so, the Wilburn decision departed from Hink-el's and Berry's central rationale for allowing a warrantless search-the rationale that the warrantless search of the container "[did] not involve any greater reduction in the ar-restee's expectations of privacy than [the reduction] caused by the arrest itself".[16]
This shift in the law became more apparent when our supreme court issued its decision in Crawford v. State.
The question in Crawford was whether, following the arrest of a person for reckless driving, the police could open and search the center console of the arrestee's vehicle without a warrant. The supreme court, ostensibly relying on its prior decision in Hinkel and on the Seventh Circuit's decision in Berry, held that the warrantless search of the center console was proper. The court explained that, in its view, the required conditions had been met: the center console was within the immediate access of the driver at the time of the stop, and the center console constituted a container that was "immediately associated" with the arrestee's person-because (1) a center console is commonly used to hold personal items, and (2) "the center console is permanently located directly next to the driver" [17]
It is true that the center consoles of motor vehicles often serve the same function as the pockets of a driver's clothing. As the Crawford court observed, center consoles are commonly employed to hold personal items such as "money, a cellular telephone, and personal hygiene items".[18] But this fact-that center consoles are often employed to store the same things as pockets-does not answer the *405 question of whether center consoles should be treated more like attaché cases or, instead, like purses.
To answer this question, the Hinkel and Berry courts focused on whether the container in question was the kind of container that was so constantly and immediately in the physical possession of the arrestee that the container should be deemed "akin to clothing"-so that the warrantless opening and search of this container "[did] not involve any greater reduction in the arrestee's expectations of privacy than [the reduction] caused by the arrest itself". [19]
In Berry, even though the Seventh Cireuit conceded that attaché cases are commonly employed to hold items that are personal to the owner, the Seventh Circuit held that an attaché case did not fall within the category of containers "immediately associated with the person" because an attaché case is "not . carried on an individual's person in the sense that his clothing or [the] items found in his pocket are".[20] And in Hinkel, the supreme court agreed with the Seventh Cireuit that the doctrine of "immediately associated with the person of the arrestee" embodied this concept of ready portability and more or less constant possession.
But in Crawford, the supreme court concluded that the center console of a motor vehicle was "immediately associated with the person" precisely because a center console is mot portable-because, "[ulnlike a briefcase, which can be placed -in the trunk or otherwise made inaccessible to the driver, the center console is permanently located directly next to the driver,"[21]
On this point, I believe that Crawford is in conflict with Hinkel and Berry. The fact that center consoles can not be removed from the passenger compartment appears to defeat any conclusion that a center console is "immediately associated with [an arrestee's] person", as that concept was explained in Berry and Hinkel, |
- When the Berry and Hinkel courts speak of containers that are "akin to clothing"containers that are the equivalent of pockets-they are referring to containers that are constantly in a person's possession, regardless of where the person might move-so that the search of these containers adds essentially nothing to the level of intrusion represented by the seizure and search of the arrestee's person. A center console fails to meet this test, T he console is not "permanently" located next to the arrestee; it is only located next to the arrestee when the arrestee is seated in the driver's seat (or the passenger seat) of the car.
In fact, under the Hinkel and Berry analysis, the immobility of a vehicle's center console affirmatively disqualifies it from the category of "immediately associated" containers-because the search of the center console is a material expansion of the search of the driver's person.
. This departure from Berry and Hinkel becomes .clearer when one considers that Crawford's "immobility" rationale would seemingly justify the police in searching a night stand and nearby dresser if a person is arrested while sitting or lying on a bed in a small hotel room, or would seemingly justify the police in searching the drawers of a desk if a person is arrested while sitting at the people commonly put personal items in dresser drawers and desk drawers.
Following Crawford, this Court in Lyons v. State held that an unlocked glove box could be searched incident to the driver's arrest.[22] And in Howard v. State, this Court held that a plastic food storage container found on the floor of the defendant's vehicle was "immediately associated" with the defendant's person-a conclusion that I disputed in my concurrence.[23]
In short, Alaska jurisprudence has substantially departed from the limited exception to the warrant requirement that was envisioned when the Hinkel court adopted *406 the "Immediately associated with the person" rule for warrantless searches of containers.
Moreover, the current law has proved confusing and difficult to apply in practi¢e-as Pitka's case illustrates. Here, the police understandably (though erroneously) assumed that the ashtray of a vehicle could be searched as a matter of course mcldent to the arrest of the driver,
The police need to be able to meaningfully assess whether a container in a vehicle may be Iawfully searched incident to the driver's arrest, The Hinkel court actually recognized this potential problem: the court questioned whether the line it had drawn-the line between containers that are "immediately associated with the person" and other types of containers-was "sufficiently perceptible to be observed in practice"." [24]
At the time, the Etnkel court declared that - "experiencé will give us the answer." [25] I now fear that the answer is not a good one. In Justice Matthews's concurrence in Crawford, le echoed the Hinkel court's earlier concern-warning that an ill-defined "immediately associated with the person" test could "cause confusion as to what properly may be searched".[26] Justice Matthews also cautioned that if Alaska's courts adopted an overly broad definition of which containers are "immediately associated with [an arrestee's] person", this might lead to searches that are unconstitutional under federal law.[27]
I think the present case provides an opportunity for our supreme court to re-evaluate this area of Alaska law-both in terms of its compatibility with federal law and its continued viability as a state law doctrine.. More specifically, I recommend that the supreme court re-examine the question of warrantless searches of:closed containers in vehicles, and that the court re-align our law with the original justification for those warrantless searches-by limiting warrantless searches incident to arrest to the containers that are normally carried on the person at all times. Such a rule would not hamper the ability of law enforcement officers to search a vehicle to ensure officer safety or to prevent the removal or destruction of evidence.[28] And such a rule would re-affirm the long-standing principle that the detached serutiny of a magistrate "is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime.[29]

. 618 P.2d 1069 (Alaska 1980),

. Dunn v. State, 653 P2d 1071, 1082 (Alaska App. 1982).

. Webster's New World College Dictionary at 713 (4th ed. 2004).

. Crawford, 138 P.3d at 256, 261 (Alaska 2006), quoting Hinkel, 618 P.2d at 1072, and United States v, Berry, 560 F.2d 861, 864 (7th Cir. 1977),

. 560 F.2d 861, 864 (7th Cir. 1977).

, Berry; 560 F.2d at 864-65.

. Id. at 864.

, Ibid. (emphasis added).

, Id. at 864, quoted in Hinkel, 618 P.2d at 1072.

. Hinkel, 618 P.2d at 1071-72.

. Id, at 1072,

. Ibid.

. 816 P.2d 907 (Alaska App. 1991).

. Wilburn, 816 P.2d at 912.

, Ibid.

. Hinkel, 618 P.2d at 1072; Berry, 560 F.2d at 864.

. Crawford, 138 P.3d at 259, 262.

. Id. at 260.

. Hinkel, 618 P.2d at 1072; Berry, 560 F.2d at 864.

. Berry, 560 F.2d at 864,

. Crawford, 138 P.3d at 260.

. 182 P.3d 649, 650-51 (Alaska App. 2008).

. 209 P.3d 1044, 1048-49 (Alaska App. 2009).

. Hinkel, 618 P. 2d at 1072.

, Ibzd

. Crawford, 138 P.3d at 266 (Justice Matthews, concurring)...

, Ibid.

. See Clark v. State, 574 P.2d 1261, 1263 (Alaska 1978) (discussing the conditions that permit a warrantless search of a vehicle under the "destructible evidence" exception); Fresneda v. State, 458 P.2d 134, 143 & n. 28 (Alaska 1969) (adopting the standards articulated in Chimel v. California, 395 U,S. 752, 89 .S.Ct 2034, 23 L.Ed.2d 685 (1969), governing warrantless searches incident to arrest).

. United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 LEd.2d 538 (1977); Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).