331 So.2d 376 (1976)
STATE of Florida, Appellant,
v.
Joseph Anthony SKROBACKI, Appellee.
No. Z-392.
District Court of Appeal of Florida, First District.
May 12, 1976.
*377 Robert L. Shevin, Atty. Gen., and Donald K. Rudser, Asst. Atty. Gen., for appellant.
Joseph Q. Tarbuck, Pensacola, for appellee.
McCORD, Judge.
This is an appeal by the State from an order of the trial court granting the defendant's (appellee's) motion to suppress and his motion to dismiss. The stipulated facts are as follows:
"On May 19, 1975, at approximately 2:40 A.M., Florida Highway Patrol Trooper Stephen R. Bevis and Gulf Breeze Police Department Sergeant Malcom Sanders were stopped along State Road 399 in Gulf Breeze at the north end of the Bob Sikes Bridge. Both officers had stepped out of their vehicles and had their blue lights and emergency flashers working when a black and maroon Chevrolet Monte Carlo came past them at a high rate of speed without any appreciable reduction of speed as it passed the two police officers. Both officers gave pursuit through Gulf Breeze on Highway 98 and onto the Pensacola Bay Bridge from Gulf Breeze to Pensacola. Trooper Bevis testified that when he first gave chase he was one to three-fourths miles behind Appellee and at one point he was traveling 110 miles per hour and the Monte Carlo was still pulling away from him. Trooper Bevis finally stopped the Appellee just before the two vehicles proceeded off the Pensacola Bay Bridge.
After the vehicle stopped, Bevis ordered the driver out with the use of his public address system. Upon the Appellee exiting the vehicle, the Trooper advised him he was under arrest for Wilfull and Wanton Reckless Driving. The driver of the vehicle was later identified as Joseph Anthony Skrobacki.
At this point in time Sergeant Sanders arrived upon the scene, got out of his car and then Bevis conducted a pat-down search of Skrobacki. Bevis requested Sanders to watch the defendant while he (Bevis) checked Skrobacki's vehicle. Skrobacki was at this point in time some 15 feet from his vehicle, and each officer was armed with a pistol in a holster at his side.
Bevis walked to the driver's side of Skrobacki's car, and with the use of his flashlight, noticed a bottle of Seagram Crown Royal Whiskey (State's Exhibit Number 1) in the already open glove compartment which was located on the passenger side of the vehicle. The bottle could be seen to be partially empty from the exterior of the vehicle. The Trooper also noticed from this position that there was a box of Remington.380 caliber pistol ammunition in the glove compartment as the end of the box was sticking out of a brown paper bag. Bevis walked around to the passenger side of the vehicle, opened the passenger door and removed the bottle of whiskey from the glove compartment. As he removed the whiskey, he noticed a pistol magazine or clip (State's Exhibit Number 2) which was laying under the bottle. The magazine contained six rounds of ammunition.
At this time, Bevis looked under the passenger seat to ascertain whether there was a gun since he had not found one on Skrobacki when he patted him down. There was not. Bevis then looked under the driver's seat and observed a purple colored velvet bag with a drawstring (State's Exhibit Number 3) beneath the driver's seat. He walked back around to the driver's side and felt the bag while it remained [sic] underneath the seat. He felt a hard object in the bag. He discovered the draw-string was loose and *378 that the bag was entirely concealed. He reached into the bag and found a fully loaded Browning .380 caliber automatic pistol. (State's Exhibit Number 4 and 5). The defendant was then placed under arrest for Carrying a Concealed Firearm."
The trial court, in granting the motion to suppress, found the search of appellee's vehicle was without probable cause. In granting the motion to dismiss the trial court found "there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant inasmuch as the Court finds that the weapon in question was `securely encased' within the purview of Florida Statute 790.25(3)(l) providing for exceptions to the application of Florida Statute 790.01." Appellant contends that the trial court erred in both respects.
As to the motion to suppress the pistol which was seized by the trooper, it appears that the only legal justification for the search would have been (1) an inventory search of an impounded vehicle or (2) a search on probable cause to believe that the vehicle contained contraband, or (3) a search as an incident to a lawful arrest. It has not been contended that the search was an inventory search and the record does not show that the vehicle was impounded. As to probable cause, the trooper upon seeing the box of ammunition and the pistol clip in the glove compartment, had reason to believe that a pistol was somewhere in the automobile but this did not justify a search for the pistol because it is not unlawful to carry a pistol in an automobile unless it is so located as to be on or about the person and is not securely encased. The trooper did not have reasonable grounds to believe that the pistol would be located under the driver's seat and not securely encased.
As to search as an incident to a lawful arrest, the bounds of such a search are described in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, as follows:
"A similar analysis underlies the `search incident to arrest' principle, and marks its proper extent. When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area `within his immediate control'  construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."
It is clear that the search of this automobile was not justified as an incident to appellant's arrest. He had been placed in custody by the two armed officers and was 15 feet away from the vehicle. The trial judge did not err in granting the motion to suppress the evidence  the pistol. Since we rule that the pistol was properly suppressed, we do not reach the question of whether or not it was "securely encased."
AFFIRMED.
RAWLS, Acting C.J., and SMITH, J., concur.