358 So.2d 596 (1978)
Peter Horace BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 77-95.
District Court of Appeal of Florida, Second District.
May 12, 1978.
*597 Jack O. Johnson, Public Defender, and David S. Bergdoll, Asst. Public Defender, Bartow, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee and William I. Munsey, Jr. and Mary Jo Gallay, Asst. Attys. Gen., Tampa, for appellee.
HOBSON, Acting Chief Judge.
In this appeal we are presented with the issue of whether the legal removal of suspects from an automobile renders illegal a protective search which would have been proper had the suspects remained in the vehicle. Under the circumstances and reasoning enunciated below we hold this to be a valid protective search.
Based upon the testimony elicited at the hearing on the motion to suppress, the trial court was entitled to find the following facts:
Appellant and a man named Thomas drove their borrowed Cadillac automobile into the parking lot of a convenience store at 8:00 at night. They sat in the car for approximately one hour. Thomas entered the store, made a small purchase, and returned to the vehicle. The men continued to sit in the car. Fearing that a robbery may occur, the cashier in the store had the sheriff's department notified. Deputies Harrison and Smith, and Police Chief Miller responded to the call.
When Chief Miller's marked cruiser entered the parking lot, appellant quickly exited his vehicle and nervously ran to the cruiser. He informed Chief Miller that the *598 Cadillac would not start. Appellant returned to the Cadillac with Chief Miller to attempt to start the vehicle. Meanwhile, Deputy Harrison interviewed the cashier. The Cadillac started, but stalled when appellant removed his foot from the accelerator. Harrison joined Chief Miller at the driver's door of the Cadillac. Thomas appeared to be extremely nervous. As appellant again exited the Cadillac, the officers noticed a pronounced bulge in the waistline of Thomas' jacket. Fearing that the bulge may have been caused by a pistol, the officers commanded Thomas to remain still. As Harrison approached the passenger side of the vehicle in which Thomas was sitting, Thomas quickly shoved his hand under the armrest which divided the front seats. Harrison had Thomas step out of the automobile. Harrison patted down the outside of Thomas' clothing and discovered that the bulge was not caused by a weapon. Harrison reached under the armrest and retrieved a plastic bag containing tinfoil packets of heroin. The two men were placed under arrest and the operator of the Cadillac, appellant, consented to a full search of the vehicle. Appellant instructed the officers in opening the broken trunk latch. This search of the car's trunk produced a large amount of heroin and other incriminating evidence.
The state does not contend that, at the time of the search under the armrest, the officers had probable cause to arrest the suspects. Hence, this search cannot be justified as a search incident to an arrest. The state does not contend that, at the time of this search, the officers had probable cause to believe that contraband or seizable evidence was in the vehicle. Hence, this search cannot be justified as a probable cause search. The state does not contend that, at the time of the search under the armrest, the officers had consent to search. Hence, this search cannot be justified as a consent search. The state does contend that the search was justified as a reasonable protective search. In ruling on the merits of this contention, we must determine 1) whether a protective search was warranted under the circumstances; and 2) whether the search exceeded the permissible scope of a protective search.
We first consider whether a protective search was warranted. Searches for weapons which may be used to assault an investigating police officer or other persons came under the careful scrutiny of the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There the Court recognized that, consistent with Fourth Amendment principles, "a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for the purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id. 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906, 907. Since a "policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect," id., the police officer may conduct a limited protective search for concealed weapons when "an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).
The Court described the appropriate circumstances warranting an investigative stop and protective search as "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety." Terry v. Ohio, supra, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. The police officer's conclusions must be based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably indicate that *599 criminal activity is afoot and that the suspect(s) are armed and dangerous. Terry v. Ohio, supra.
In the case at bar, we find that the investigation and a protective search were warranted by the circumstances. Armed robberies at night of convenience stores have become quite common occurrences. The officers were summoned at night to investigate a potential robbery of a convenience store. At the scene, the officers were informed that the two suspects had been sitting in the car for a considerable length of time, and for no apparent reason. When appellant saw the police cruiser arrive, he hastened to the cruiser and attempted to explain the suspects' activity. This explanation came under suspicion when their car started. Both suspects, especially Thomas, seemed extremely nervous. Both police officers noted a pronounced bulge about the waistline of the jacket worn by Thomas. The officers feared that the bulge was caused by a weapon. When the police officers commanded Thomas to remain still, Thomas shoved his hand under the armrest as if to conceal or retrieve something.
These observations led the police officers to reasonably conclude, in light of their experience, that criminal activity was afoot and that the suspects with whom the officers were dealing may have been armed and dangerous. Throughout the course of the investigation, the officers were known to the suspects to be policemen. The officers' reasonable inquiries, and the initial stages of the encounter, did nothing to dispel the officers' reasonable fear for their own safety and the safety of others. They therefore were entitled, for their own safety and the safety of others, to conduct a carefully limited search to discover weapons which might be used in an assault against them. Terry v. Ohio, supra, 392 U.S. at 30, 88 S.Ct. at 1885, 20 L.Ed.2d at 911.
We must now determine whether the search extended beyond the scope of a protective search. In recognizing the legality of protective searches without probable cause, the Supreme Court in Terry pointed out that the "sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. The sanction imposed for improperly conducted protective searches is that the "evidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation." Id., 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 910.
In Terry, the Court had "no serious problem" finding that patting down the outside of the suspects' clothing and reaching into their pockets when a weapon was felt was a search confined "strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered weapons." Id., 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. In Adams v. Williams, supra, the circumstances warranted the investigating officer's action in immediately reaching into the suspect's waistband to seize a pistol.
It soon became clear that the principles of Terry v. Ohio justify a protective search and seizure beyond the person of the suspect. The protective search area may extend to areas within the suspect's immediate control; that is, the area from which the suspect may obtain a weapon with which to assault the investigating officers. Commonwealth v. Silva, 366 Mass. 402, 318 N.E.2d 895, 900 (1974) [citing Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)]; Young v. United States, 140 U.S.App.D.C. 333, 435 F.2d 405 (1970). Where a suspect remains in the automobile "a reasonable self-protective search under proper circumstances need not be confined to a personal frisk of the occupants of the vehicle, but should extend to the area of the car reasonably accessible to the occupants. Such area should at least include the front seat and floor of the vehicle." State v. Malbeck, 552 P.2d 1092, 1094 (Wash. App.2d 1976).
*600 The Florida case of Lyles v. State, 312 So.2d 495 (Fla. 1st DCA 1975) is in accordance with this authority. In Lyles, police officers had reason to suspect that the vehicle in which Lyles was seated was stolen. A police officer approached the vehicle to compare its motor vehicle identification number with that of the stolen vehicle. While making this comparison, the officer noticed Lyles reach under a nearby armrest. Immediately, and while Lyles was still seated beside the armrest, the officer reached into the vehicle and under the armrest. The officer retrieved a small plastic bag containing a white powder and an envelope containing heroin. The court upheld the search under the principles of Terry v. Ohio. The court found that the officer had adequate reason to suspect that a weapon had been hidden under the armrest next to Lyles. The court also found that the scope of the search was properly limited to only the armrest. The court went on to state: "Even though no weapon was discovered, it is the reasonableness of the officer's belief that governs and not the actual existence of the weapon." 312 So.2d at 496.
The scope of protective searches has been extended beyond a strict construction of "the immediate control of the suspect." In United States v. Thomas, 314 A.2d 464 (D.C. Ct.App. 1974), the court was faced with the narrow issue: "Did removal of the suspects from their car make unreasonable the search which would have been reasonable had they remained in it?" The court concluded that it did not. The court stated, "The principles enunciated in that case (Terry v. Ohio) are wholly consistent with the concept that an automobile's passenger compartment may be the subject of a limited search, in circumstances such as those presented here, for the protection of officers who otherwise might be endangered if the occupants were permitted to reenter the vehicle at the end of the investigative inquiry." (Emphasis added) 314 A.2d at 468.
It is important to note that protective searches incident to an investigative stop involve the danger that the suspect will return to a vehicle in which a weapon may be hidden, since the investigating officer may not have probable cause to arrest the suspect. This danger, inherent in investigative stops, has been widely recognized. See, for example, Commonwealth v. Silva, supra; United States v. Powless, 546 F.2d 792 (8th Cir.1977), cert. denied 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588; Johnson v. United States, 367 A.2d 1316 (D.C.Ct.App. 1977). In an early case on this point, United States v. Green, 151 U.S.App.D.C. 35, 465 F.2d 620 (1972), the United States Court of Appeals for the District of Columbia Circuit justified this extension of protective searches on the basis that the area would be accessible to the suspect if the suspect should break away and attempt to flee, or should the suspect be allowed to re-enter the vehicle after completion of the investigation. The court pointed out that the danger to the police officers is a real danger.
"Although appellant asserts that it is `incredulous' that he would open fire on the officers after they had permitted him to re-enter his vehicle, we note that the possibility is not as remote as one might think. [The court then quoted statistics.] As one court has observed [State v. Coles, 20 Ohio Misc. 12, 249 N.E.2d 553, 559 (1969)], the cemeteries and police stations contain living epitaphs of those dedicated traffic officers who failed to take reasonable precautions for their own protection.' Moreover, the arrestee may not be the respectable citizen we would like him to be, but rather he may be an individual who may have good reason to avoid prolonged encounter with the police, thereby resulting in resort to a weapon or attempted escape." 151 U.S.App.D.C. at 40, 465 F.2d at 625.
We hasten to add that in each of these cases, the police received some specific and reliable information or observed some act of an occupant of the vehicle indicating concealment, which gave rise to a well-founded suspicion that a weapon may be concealed in the passenger compartment of the vehicle.
We hold that under proper circumstances a police officer making a valid investigative stop involving an automobile *601 may conduct a carefully limited search of areas accessible to occupants of the vehicle and in which the officer has, based upon specific and articulable facts, well-founded reason to believe an accessible weapon is hidden. This protective search may take place even though the occupants have been temporarily removed from the vehicle. The protective search must be limited to circumstances in which the investigating officer has received some reliable information, or has observed some furtive gesture, indicating the presence of a weapon in a particular and accessible area of the vehicle. The protective search must be limited to that particular area. The protective search must be conducted in a manner reasonably calculated to uncover weapons only. This extension of the scope of a protective search applies only where, at the time of the search, it appears that the suspect should be allowed to return to his vehicle.
Applying these principles and limitations to the case at bar, we find that the search under the armrest did not transgress the permissible scope of a protective search. The police officers were called to investigate a potential robbery, the circumstances of which we have determined to more than justify the reasonable suspicion that criminal activity may be afoot and that the suspects may be armed and dangerous. The investigating officers saw a bulge in Thomas' waistband. Their experience caused them to reasonably suspect that under the circumstances the bulge may be caused by a weapon. When they ordered Thomas to remain still and Deputy Harrison approached, Thomas made sudden movements as if to conceal something under the armrest. Thomas' furtive gesture about the armrest focused the officers' reasonable suspicions of the presence of an available weapon under the armrest. After Deputy Harrison verified that Thomas had no weapon on his person, the officer was warranted in searching the area which Thomas' action indicated a weapon may be concealed. If present, the weapon would have been immediately available to either appellant or Thomas if either man were permitted to re-enter the vehicle. It must be remembered that until the search under the armrest, the officers were without probable cause to arrest the suspects. The search was based upon specific and articulable facts giving rise to well-founded suspicion that a weapon was present under the armrest. The search was limited to only that small particular area of the car which the suspect's furtive gesture indicated may conceal a weapon. The search was limited to a manner no more extensive than was necessary to disclose any weapon hidden under the armrest. Consequently, the search under the armrest fell within the scope of a protective search. The police officer acted reasonably in his search under the armrest. Accord, Commonwealth v. Almeida, 366 N.E.2d 756 (Mass. 1977).
We do not consider our decision to be in conflict with the decision in State v. Skrobacki, 331 So.2d 376 (Fla. 1st DCA 1976). In that case the police had probable cause to arrest the suspect, and did arrest the suspect, prior to a search of his vehicle. There was little likelihood that the suspect was going to be permitted to return to his vehicle.
The search of the remainder of the vehicle was performed upon appellant's consent. Appellant has not shown this consent to be unknowing or involuntary.
Appellant has failed to demonstrate reversible error. The trial court's denials of appellant's motion to suppress and motion for new trial were proper. Accordingly, appellant's conviction is hereby
AFFIRMED.
GRIMES and RYDER, JJ., concur.