391 So.2d 783 (1980)
John I. ROMANOFF, Appellant,
v.
STATE of Florida, Appellee.
No. 80-97.
District Court of Appeal of Florida, Fourth District.
December 31, 1980.
Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Asst. Public Defender, and John R. Cullom, Legal Intern, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Ondina Felipe, Asst. Atty. Gen., West Palm Beach, for appellee.
LETTS, Chief Judge.
This appeal evolves from a charge of carrying a concealed firearm and is framed against the backdrop of yet another anonymous BOLO, the trial judge denying the motion to suppress filed by the driver of a vehicle when a search of that vehicle revealed a .22 caliber pistol. We affirm.
The officer on patrol was advised by radio that an unidentified subject had pulled a gun on someone at a hotel and then exited to a white Chevrolet. At the very moment of receipt of that BOLO, the officer's cruiser was by chance only a block from the hotel in question and within seconds he saw a white Chevrolet pull out *784 in front of him onto the main drag. The officer meanwhile requested more information but none was available. Accordingly, on "instinct" he activated his blue light whereupon he observed the driver lean over as if to place something under the front passenger seat. The Chevrolet was then pulled over and the officer, at gun point, ordered the two occupants to exit the vehicle, patted down the driver, on whom he found a knife and thereafter discovered a .22 caliber pistol upon searching under the front passenger seat.
It requires no deep thought to figure out the points on appeal. Simply stated, it is argued that there was no founded suspicion for the stop under Section 901.151(2), Florida Statutes (1979) and no probable cause for the search under Chapter 901.151(5). We disagree.

AS TO THE STOP
At the hearing on the motion to suppress, the trial judge had a more difficult task than we do now, for he did not then have the benefit of the Supreme Court ruling in Hetland v. State, 387 So.2d 963 (Fla. 1980) which in part overruled our own prior opinion in St. John v. State, 363 So.2d 862 (Fla. 4th DCA 1978). Suffice it to say that Hetland succinctly enunciates that "a valid stop may be based on information obtained from an anonymous tipster if that information appears sufficiently reliable because of the surrounding circumstances or the nature of the information given in the tip itself." This being so, we need only examine the instant facts to see if the information, or the nature thereof, was sufficiently reliable under the circumstances.
Revisiting our laundry list set forth in Lachs v. State, 366 So.2d 1223 (Fla. 4th DCA 1979), we note that:
1. The reliability factor of an anonymous BOLO as discussed in Hetland, has already been commented on above.
2. The location is certainly a factor here. The relayed information placed a white Chevrolet at or in the vicinity of the hotel where it was in fact spotted.
3. The time is also relevant because the automobile was spotted within seconds of the BOLO.
4. The appearance of the vehicle is pertinent.
5. The appellant argues that there was no incongruity in this case because "a person driving a white automobile on the streets in the early evening and obeying all traffic laws is certainly not incongruous." However, the BOLO spoke of a white Chevrolet at or near the site of the gun pulling incident and lo and behold within seconds there one was. We are not unmindful of Lewis v. State, 337 So.2d 1031 (Fla. 2d DCA 1976) and agree with the principle that the police could not stop every white Chevrolet with a cast of thousands from which to make the choice. However, this particular vehicle was not only a white Chevrolet, but it was at the exact right place at the exact right time.[1]
At this juncture we must ask the same rhetorical question seen so often in appellate decisions: What should the officer have done, let the Chevrolet go?[2] The public defender, during oral argument before this court, answered "Yes" to the question. However, we believe that under the circumstances of this case and the exigency of a moving automobile, all coupled with the nature of the information contained in the BOLO, there existed a founded suspicion which justified the stop.

AS TO THE SEARCH
Having determined that the stop was permissible we now turn our attention to probable cause for the search.
Examining first the search of the driver's person, we likewise hold that to be *785 proper. The reason for the stop was the report of the alleged gun pulling incident at the hotel. Accordingly, the officer, in assuming he was stopping the correct suspect, would have to have probable cause to believe that the suspect was possessed of a firearm and, therefore, a threat to the safety of the officer or another person. As we have already stated, the pat down revealed only a knife (for the possession of which weapon the driver was not charged) so that the offending firearm remained undetected. However, the officer, upon activating his blue light, and observed the driver reach under the front passenger seat. Having failed to locate the gun on the defendant's person it certainly was reasonable for the officer to assume the gun might have been placed under the passenger seat, an assumption which subsequent events proved correct. Under the circumstances of this case we agree with Brown v. State, 358 So.2d 596 (Fla. 2d DCA 1978) where the court clearly held that the search permitted following an investigative stop, may include a protective search of the passenger compartment of a vehicle even though the occupants are outside it. Remember the facts before us indicate that the stop had not by itself included an arrest. Accordingly, we agree with the rationale of Brown that there is danger to the police and other persons in allowing a suspect to return to his vehicle where a gun may be hidden.
At this point we digress to discuss a request from the State that we clarify supposedly conflicting dicta on the effect of a report indicating the presence of a gun on the right to stop and frisk. In Isham v. State, 369 So.2d 103 (Fla. 4th DCA 1979) we approved a stop but disapproved the search. In so doing we indicated that had the BOLO in Isham also included information that the suspect might be armed, a frisk might have been permissible. That statement in Isham was not intended to obviate any requirement of a founded suspicion for a stop in the first place, but rather was intended to envisage just such a factual situation as we have before us now. This being so, we see no need to recede from the dicta in Isham as was suggested in further dicta found in, In the Interest of G.A.R.III (a child), 387 So.2d 404 (Fla. 4th DCA 1980), because we find no conflict with it. Obviously we certainly agree with G.A.R., "that the mere mention of a gun will [not] justify an otherwise impermissible stop or frisk" (at 408). In the instant case there is much more than mere mention of a gun, but we reiterate that the added information on the presence of a gun obviously offers the very "threat to the safety of the officer or any other person" about which the language of the Florida stop and frisk statute speaks. To hold other than that is to suggest that the Fourth Amendment be used to facilitate the subjection of the police and the innocent public to criminal target practice-all supposedly in the name of the constitution. Such a departure from common sense was specifically rejected in Wilson v. State, 324 So.2d 700 (Fla. 4th DCA 1976), where Judge Downey, speaking for the court quoted from Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) as follows:
There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet. Harlan, J., Concurring, 392 U.S. at 33, 88 S.Ct. at 1886.
AFFIRMED.
BERANEK and HERSEY, JJ., concur.
NOTES
[1] Other factors were set forth in Lachs which are not applicable here, but as we noted in Lachs the list was neither exclusive nor demanding of the presence of every factor on the list.
[2] For example see State v. Hetland, 366 So.2d 831, 833 (Fla. 2d DCA 1979) when the court asked: "In a situation like this, what is a policeman supposed to do? ... Must he ignore the information given?"