HERSEY, Judge.
On July 6, 1978, appellants were twice stopped by the police. Evidence seized as a result of these stops culminated in separate formal charges arising out of two unrelated incidents. This appeal involves one set of charges; Clements v. State, 396 So.2d 217 (Fla.4th DCA 1981) involves the other.
Appellants pled nolo contendere to kidnapping, sexual battery without a firearm and attempted robbery without a firearm, specifically reserving the right to bring these consolidated appeals from the partial denial of their motions to suppress evidence.
The issue presented by these motions was whether the July 6,1978 stops of appellants were illegal so as to make the subsequent arrest and seizure of evidence illegal and all resulting evidence (including fingerprints, blood and saliva samples, show-ups, line *216 ups, and statements) fruits of the poisonous tree.
After an evidentiary hearing on the motions, the trial court made the following findings of fact, all of which are substantiated by the record and therefore adopted by this Court:
(a) On Thursday July 6, 1978 at approximately 4:30 A.M. there was a BOLO broadcast by the Deerfield Beach Police Department that a rape-hostage situation existed at Fire Station # 2 in Deerfield Beach.
(b) Officer Mugridge of the Deerfield Beach Police Department was in the area and responded to the BOLO, arriving at the fire station within thirty (30) seconds.
(c) Mudgridge [sic] spotted a vehicle pulling away from the Deerfield Beach Police Training Center with its lights out. There was no other traffic in the area.
(d) The Training Center is located approximately 150-200 feet north of Fire Station # 2 with a driveway and parking area between it and the fire station.
(e) The position of the vehicle with respect to a fence located on the north side of the training center indicated to Mu-gridge that the vehicle had to have backed in.
(f) The Training Center is not open at night and Officer Mugridge knew this.
(g) Mugridge immediately radio’ed his sighting, and Lt. Jackson of the Deerfield Beach Police Department radio’ed to stop any car leaving the area.
(h) Officer Mugridge and Officer Mitchell, who just arrived on the scene, pulled the vehicle over on Powerline Road within several blocks of the fire station and training center.
(i) Mugridge radio’ed in the tag number of the vehicle before exiting his car. The car was a blue Chevy.
(j) The occupants of the car (four, young, white males, including the two defendants) were ordered to exit at gun point.
(k) Officer Williams, who now was on the scene, got the names of the occupants.
(l) Officer Mitchell searched the car and found two (2) knives and a pellet gun under the passenger’s seat.
(m) The car had been stopped for three (3) to five (5) minutes when a broadcast over the radio indicated that the rape-hostage situation still existed at the fire station.
(n) Upon hearing this, the Officers returned the knives and gun and allowed the vehicle and occupants to leave.
(o) Responding to the fire station, the officers found two young females there who related that they had been taken against their will to a rock pit area near the fire station by four young white males with long hair in a blue Chevy. One of the girls said she was raped, and they both had been left there and had run to the fire station, where the firemen on duty called the police.
(p) Lt. Jackson immediately ordered that the blue Chevy with the four young white males be located and stopped again.
(q) Officer Williams located the car within minutes several miles from the fire station on Hillsboro Boulevard in Deer-field Beach.
(r) He recognized the vehicle from the first stop, and after calling in the tag number and having it verified as the same number that he had called in before, he stopped the car and arrested the four occupants including the Defendants on charges relating to the kidnapping and sexual battery of the two girls.
(s) The modus operandi of the crimes committed on the two girls on July 6, 1978 and the evidence developed from the July 6, 1978 stop and arrest led to the placing of the charges against the Defendants for the June 30, 1978 kidnapping, sexual battery and robbery which are the subject of the case sub judice.
The trial court then determined that these facts were sufficient to create a “founded suspicion” at the time of the first stop that the persons in the vehicle had committed or were about to commit a violation of the criminal laws of the State. The court further determined that the evidence relating to the vehicle’s tag number, make, *217 and color and the identification, number, and description of the occupants was all legally obtained, but that the seizure of the knives and gun was not justified. We agree.
A “founded suspicion” is a suspicion which has some factual foundation in the circumstances observed by the detaining officer, when those circumstances are interpreted in light of the officer’s knowledge. To determine whether the circumstances reasonably suggest the suspect’s possible commission, existing or imminent, of a crime, certain factors should be evaluated: time, day of the week, location, physical appearance of the suspect, behavior of the suspect, appearance and manner of operation of any vehicle involved, and anything incongruous or unusual in the situation as interpreted in light of the officer’s knowledge. State v. Stevens, 354 So.2d 1244 (Fla.4th DCA 1978).
The officer observed the car at 4:30 A.M. pulling away from the closed Training Center with its lights out. There was no other traffic in the area and the detaining officers knew that just thirty (30) seconds earlier, a BOLO concerning a rape-hostage situation within 200 feet of that location was broadcast. These circumstances were sufficient to create the required “founded suspicion.” Romanoff v. State, 391 So.2d 783 (Fla.4th DCA 1980).
We also agree with the trial court’s ultimate finding that the legally obtained evidence in conjunction with the information received from the victims gave the officers probable cause to make the second stop of the vehicle and to arrest appellants.
The victims’ description of the automobile and its occupants coupled with the officers’ previous lawful observations provided the officers with probable cause to arrest. Thus, the evidence obtained as a result of the arrest, with the exception of the knives and gun, was not fruit of the poisonous tree.
AFFIRMED.
MOORE and GLICKSTEIN, JJ., concur.