437 So.2d 217 (1983)
STATE of Florida, Appellant,
v.
Joseph W. PATRICK, Appellee.
No. 82-1248.
District Court of Appeal of Florida, Fourth District.
September 14, 1983.
Jim Smith, Atty. Gen., Tallahassee, Joy B. Shearer, Asst. Atty. Gen., and James P. McLane, Certified Legal Intern, West Palm Beach, for appellant.
Robert T. Adams, Jr., Marianna, for appellee.
GLICKSTEIN, Judge.
The state appeals from an order granting the motion to suppress of the defendant, who was charged with carrying a concealed firearm. We reverse and remand.
The trial court, following the hearing upon the subject motion, made the following findings of fact:
1. That on January 6, 1982, the defendant was stopped for driving with an expired license tag on his automobile,
2. That the arresting officer observed the defendant make a sudden move toward his glove compartment and then toward the middle of his seat,
3. That upon exiting his vehicle, the defendant stated that he did not have any weapons,
4. That based on his previous observations, and in concern for his safety, the arresting officer then entered the defendant's vehicle and found a .32 cal. pistol in the middle area of the vehicle.
At the hearing, the arresting officer had testified that, at about 8:00 p.m., he came behind the vehicle which defendant was operating and noticed that the license tag had expired; therefore, he stopped the defendant and observed the following:
As I was stopping him, as he was stopping his vehicle, he reached forward and to the right toward the glove compartment area. As I exited my police vehicle and walked up on the driver's side of his vehicle, I noticed him reaching in the middle seat area, the arm rest area.
The officer asked the defendant to exit, took him to the rear of the vehicle and frisked him. The officer then testified:
A. Then I went to the front of the car. I shined my flashlight inside. I couldn't see anything so then I went to *218 the middle arm rest area of the seat where I saw him reaching and that's where I found the pistol.
Q. Was the gun exposed in any way, or was it totally hidden?
A. No, sir, totally concealed.
Q. Do you remember what it was underneath?
A. Underneath the armrest that comes out of the middle of the front seat.
Q. You wouldn't see any part of the gun?
A. No, sir, I could not.
Following the taking of testimony, defense counsel was able to convince the trial court that the motion to suppress should be granted because of the Supreme Court decision in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). He successfully argued that because the Court approved the search of a jacket that belonged to, and was located in the backseat of the vehicle occupied by, the defendant who was then in custodial arrest, it followed that the present search was unlawful because the officer testified that the defendant was not under arrest after the frisk when the weapon was found. The assistant state attorney called to the trial court's attention the decision of this court in Hochstetler v. State, 400 So.2d 974 (Fla. 4th DCA 1981), petition for review denied, 413 So.2d 876 (Fla. 1982), without success.
The order which we now review was entered on June 7, 1982. Shortly thereafter, this court rendered its decision in Cheatem v. State, 416 So.2d 35, 36 (Fla. 4th DCA 1982), wherein we recited the following facts:
In May of 1979 Officer Tozzie of the Wilton Manors Police Department observed that the vehicle appellant operated did not display a plainly visible license plate or a valid, unexpired inspection certificate. Both are required by sections 316.605 and 316.610, Florida Statutes (Supp. 1978), respectively. The officer followed appellant out of the Wilton Manors city limits into the City of Oakland Park where he stopped appellant. While appellant ostensibly was looking for his vehicle registration, the officer observed him pushing a towel down between the console and the front seats. Concerned for his own safety, the officer asked appellant to step out from, and to the rear of, the vehicle. The officer then looked underneath the towel and found a .357 Magnum.
Based on those facts we held as follows:
We also disagree with appellant's second contention that the warrantless search that followed the stop was improper. In Stevens v. State, 354 So.2d 110, 111 (Fla.3d DCA 1978), while appellant was checking his driver's license, he "was observed making motions toward an object wrapped in a towel and concealed in the front seat." Such facts reasonably justified conducting a search. Similarly, in Brown v. State, 358 So.2d 596, 599 (Fla. 2d DCA 1978), the search was upheld when the occupant of the vehicle "shoved his hand under the armrest as if to conceal or retrieve something."
Id. at 36-37.
As can be seen from Cheatem, the facts therein, as well as those in Brown v. State to which it refers, are somewhat akin to the present case. In Hochstetler, the defendant, who had been frisked and was outside the vehicle, made a sudden move towards the vehicle. This led the officer to make a self-protective search in the front seat area of the vehicle. We affirmed the trial court's denial of the defendant's motion to suppress.
We realize that every sudden movement made by an occupant of a vehicle cannot serve as a predicate for a frisk and subsequent search. Here, however, the motion involved could have reasonably been considered by the officer to conceal or retrieve a weapon; and the officer's reaction thereto was therefore reasonable.
There is an additional fact in this case that makes the officer's self-protective search even more appropriate; namely, the fact that after the frisk the defendant was free to return to the vehicle. As we earlier said, defense counsel's primary argument *219 was centered around the fact that after the frisk, the defendant was not under custodial arrest. The freedom of an occupant to return to the vehicle or the absence of such freedom was considered by this court to be most significant in Clements v. State, 396 So.2d 214 (Fla. 4th DCA), petition for review denied, 408 So.2d 1092 (Fla. 1981). Therein it was held that the evidence should have been suppressed after a finding that the search was conducted prior to the point at which the freedom to reoccupy the vehicle would have been apparent. The right of reoccupancy is, of course, significant, because of the vulnerability of the officer. Let us assume that in this case, instead of taking preventive action, the officer after the frisk simply remained at the rear of the vehicle, doing the paperwork necessitated by the expired tag; and that the defendant returned to the vehicle, grabbed the weapon and shot the officer. What then?
As for the inapplicability of Belton, custodial lawful arrest is clearly not a sine quanon for a self-protective search in such circumstances as the present; and the Supreme Court obviously did not so hold. What it has expressly recognized was expressed in South Dakota v. Opperman, 428 U.S. 364, 367-68, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976), with respect to vehicles:
Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. In discharging their varied responsibilities for ensuring the public safety, law enforcement officials are necessarily brought into frequent contact with automobiles. Most of this contact is distinctly noncriminal in nature. Cady v. Dombrowski, supra, 413 U.S. 433 at 442, 93 S.Ct. [2523] at 2528 [37 L.Ed.2d 706]. Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.
(Footnote omitted.) We believe that Court, having recognized the myriad unexpected, potentially dangerous incidents which can befall a law enforcement officer during routine community caretaking,[1] would support our decision in this case.
WALDEN, J., concurs.
ANSTEAD, C.J., dissents with opinion.
ANSTEAD, Chief Judge, dissenting:
I dissent for substantially the same reasons expressed in my dissenting opinion in Hochstetler v. State, 400 So.2d 974 (Fla. 4th DCA 1981).
NOTES
[1] See Cady v. Dombrowski, 413 U.S. 433, 440-41, 93 S.Ct. 2523, 2527-28, 37 L.Ed.2d 706, 715 (1973). Since the original drafting of this opinion, the United States Supreme Court held a similar search of the passenger compartment of an automobile reasonably fell within the protective search principles of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Michigan v. Long, ___ U.S. ___, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).