GLICKSTEIN, Judge.
Appellant entered a plea of no contest to trafficking in cocaine and possession of a firearm with an altered serial number, after denial of his motion to suppress. We affirm.
This case presents the tensions between the right of each member of society to be free from unwarranted police intrusion and the right of collective members of society to be protected from crime. It is in this area that we, as judges, must apply our ability with great precision and write with a fine brush as each factual scenario crosses our desk.
More specifically, this case questions the extent of restraint a law enforcement officer must exercise when he knows a crime has actually been committed and he seeks out the perpetrator in the area of the crime. The. foregoing statement also describes what this case is not about; namely, the restraint which a law enforcement officer must exercise when he has no knowledge that a crime was committed.
The actual questions to be answered are (1) the right to stop and detain a motorist whom the officer reasonably believes to be a suspect of the actual crime he knows to have been committed; and (2) the obligation of the officer to determine the guilt or innocence of the suspect motorist after he has been stopped before searching the vehicle of the suspected motorist who has made a “furtive move” before being stopped. It is the second question in this case which is critical.
The facts establish that Officer Joseph Kessling of the Oakland Park Police Department on vehicle patrol received a BOLO, informing him that an armed robbery had taken place just down the street from where he was patrolling and had been committed by two black males, approximately thirty years of age, one of whom was wearing tan pants. The officer spotted a vehicle, bearing out-of-county tags, with two black men who fit the general descriptions which the robbery victim had furnished. As the officer followed, he observed appellant, in the passenger seat, who appeared to be hiding something underneath the seat, which the officer believed to be “a gun, or money or something like that.”
As the officer approached the vehicle and before he ordered the men out of it, he saw an unzipped bag on the floor, which would not fit under the front seat. He had both men step away from the car, and had them stand at the rear of their car and in front of his. He did not recall whether he entered the car first or patted the men down first. Eventually however, he found cocaine and money inside the ear. While he did not find firearms on the men, he did find a gun under the front seat of the car. The officer explained several times why he searched the car, and the gist of his explanation was the following:
*809 I knew there was something underneath the seat, and I thought for sure this was the armed robbery and I wanted to get them away from the car, because I thought for sure there was a gun in there, and I wanted to do it for my own safety, due to the fact that he kept bending over, trying to stuff something under the seat.
Q. But you weren’t in any danger with them being away from the gun; they were now fifteen, twenty feet away from what you thought might be a firearm?
A. Yes.
Q. So you weren’t in any danger at that point, once you got them out of the car?
A. Sure I was. I didn’t know if they had the gun on them. You know, armed robbers usually carry two, three guns; you know, they got guns all over the place.
We do not consider it reasonable to propose a general rule that would require a law enforcement officer in these circumstances to refrain from a search of the vehicle until he had determined, in some fashion, that he had in tow the men who had committed the crime. We surely could not require him to wait for identification on site by the victim. What if the victim were dead or wounded? What if, instead of two males, there were five? What if there were two vehicles being stopped, not one? The “what if” questions are as infinite as the unexpected confrontations which law enforcement officers face.
This writer has written at least two opinions on this subject, upholding the search of a vehicle in similar circumstances; namely, State v. Patrick, 437 So.2d 217 (Fla. 4th DCA 1983), and Cheatem v. State, 416 So.2d 35, 36 (Fla. 4th DCA 1982). More important, the Supreme Court in Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983), held:
Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on “specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant” the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See Terry, 392 U.S., at 21, 88 S.Ct., at 1880. “[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Id., at 27, 88 S.Ct., at 1883. If a suspect is “dangerous,” he is no less dangerous simply because he is not arrested.
(Footnote omitted.)
Law enforcement officers are not appellate judges who may take days, weeks or months to render decisions in a case. They are akin to soldiers, who must make quick, informed decisions involving life, death and individual rights. These officers are entitled to know that those who are passing judgment on the officers’ judgmental decisions in the field will take in every case a realistic, common sense approach in balancing those actions against claimed violations of the constitutional protections that are the cornerstone of individual liberty.
LETTS, J., concurs.
BARKETT, J., concurs in result only.