GLICKSTEIN, Judge.
This is an appeal of a final order, following the denial of a motion to suppress, and the entry of a plea of nolo contendere, reserving the right to appeal. We reverse.
On October 17, 1984, a deputy was stopped in front of a Big Daddy’s Lounge at 3:40 a.m. The deputy knew that the lounge was open at that time and was aware that its patrons would sometimes park at the Burger King located directly across the street. He observed a white Buick, with the interior light on, parked in front of the Burger King, as well as appellant in the vehicle, doing nothing unusual. Appellant then looked in the deputy’s direction, exited the vehicle and began to walk quickly away from it. The deputy, suspicious because the area was a high crime area and Burger King had been previously vandalized, burglarized and robbed, said, “Hey, what’s going on? Come here a minute.” Appellant came over and was asked where he was going. Appellant pointed to some telephones approximately a block and a half from where his vehicle was located and said he was going to make a call, to which the deputy replied, “well it’s kind of unusual to park that far away to walk to a telephone,” then asked for identification without giving appellant an opportunity to respond to his observation of the distance. Appellant showed his license to the deputy, who then asked if the vehicle he had left was his. Appellant told him that he had the registration in the car.
At the hearing the deputy was asked about an incident — very important to us— between the time of the original confrontation and the subsequent reentry by appellant into the vehicle in the officer’s presence:
Q. Do you recall him saying to you, Officer, I don’t want to go into the car and you saying, well, look, we can do it one of two ways, either you can go inside the car and get the registration or I can arrest you for loitering and prowling and then you can get the registration?
*478 A. I might have conveyed that general message. Whether or not I used those exact words—
Q. But you did convey that to him?
A. I tried to indicate to him that there was, if you want to use the word danger of or he was possibly susceptible to arrest for loitering and prowling. I did indicate that to him.
The deputy testified appellant went inside the car after the above incident. As he learned as if he were going to open the glove box, he quickly shoved something under the front seat. The deputy had no idea what it was but was concerned for his safety because of the possibility that it was a weapon, so he told appellant to get out of the vehicle and to put his hands on top of the vehicle. The deputy then reached under the seat and pulled out a cardboard shoebox with traces of marijuana in it, arrested appellant and searched the vehicle. Plastic “tooter” straws, were found containing some type of residue and a small glass bottle, commonly used to hold cocaine was also found. Appellant was issued a notice to appear on the charges of possession of drug paraphernalia and possession of marijuana. As a result of the lab report on the residue, the state attorney’s office also charged appellant with possession of cocaine.
We said that the above incident was very important to us; and its description arose on cross-examination, which has been described by Professor Wigmore as “beyond any doubt the greatest legal engine ever invented for the discovery of truth.” J.J. Wigmore, Evidence in Trial at Common Laws § 1367 at 32 (Chadeaus rev. ed. 1974).
There is no question in our mind that the officer’s candid testimony pictures a situation wherein appellant had literally been placed by the deputy between a rock and a hard place. Surely, there was a legitimate way to request that appellant obtain the registration from within the vehicle so that he understood that there was no obligation on his part to do so. He had done nothing to warrant being placed in the jeopardy in which the deputy placed him. The officer could have obtained the information about the vehicle without appellant’s providing the registration. The officer could have also validly sought to obtain appellant’s consent, but failed to do so.
This court has not hesitated to express concern for the safety of law enforcement officers. See State v. Patrick, 437 So.2d 217 (Fla. 4th DCA 1983); Clements v. State, 396 So.2d 217 (Fla. 4th DCA 1981). If we have not quoted therein annual statistics from FDLE and the FBI as to the number of law enforcement officers killed in the line of duty, it is only because the appellate records did not contain them.
This case, however, involves our concern for the freedom of the individual and our determination that unwarranted intrusion into or erosion of that freedom be prevented.
Appellant here is unlike the teenage trespassers in State v. Dilyerd, 467 So.2d 301 (Fla.1985), and the individuals in State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978).
GUNTHER and STONE, JJ., concur.